# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1050

_____

| | |
|---|---|
| Vicky E. Jessie, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern |
| | * District of Missouri. |
| John E. Potter, Postmaster General, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: November 13, 2007
Filed: February 20, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Vicky E. Jessie appeals from the district court's[1] dismissal of her Title VII complaint alleging discrimination by her employer, the United States Postal Service, in connection with its response to her work-related injuries. The district court held that Jessie's Title VII claim against a federal agency was barred by her failure to contact an Equal Employment Opportunity Counselor within forty-five days of the action of which she complains, see 29 C.F.R. § 1614.105(a)(1) (forty-five day requirement); Bailey v. United States Postal Serv., 208 F.3d 652, 654-55 (8th Cir.

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2000) (failure to comply with requirement fatal to Title VII suit against federal agency). Jessie contends that the deadline was tolled because she was "physically and emotionally incapacitated," she was under the influence of prescription narcotics, and she was "unable to take care of herself." Because the record does not substantiate her claim of mental incapacitation, we affirm the district court's entry of judgment for the Postal Service.

Jessie was a letter carrier in St. Charles, Missouri, until she injured her knees on the job in separate incidents in 1997 and 1998. In 1999, she filed a claim for compensation under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101-8193. The Office of Workers' Compensation Programs, which administers the Act, authorized surgeries and paid her compensation for total disability.

Under the Federal Employees' Compensation Act, if the government offers a partially disabled employee a job suitable in light of the employee's disability, the employee must accept the job or lose his disability benefits. 5 U.S.C. § 8106(c)(2). On February 2, 2000, the Postal Service offered Jessie a position as a modified letter carrier. Jessie declined the position as incompatible with her disabilities. Although the Office of Workers' Compensation Programs terminated her compensation benefits, Jessie was vindicated on appeal when an Office hearing representative reversed the initial determination and reinstated her benefits. On July 27, 2001, the Postal Service offered Jessie a new position of "modified clerk," based on restrictions outlined by her attending physician. Almost immediately thereafter, on July 31, 2001, Jessie pursued a different remedy by applying for disability retirement from the Postal Service, which was ultimately approved on May 23, 2002. Even after applying for retirement, however, Jessie continued to argue that the Postal Service had not offered her a suitable job. On September 25, 2001, the Office of Workers' Compensation Programs again terminated Jessie's workers' compensation benefits on the ground that she had refused an offer of suitable work. This time, Jessie lost her appeal to the Employees'

Compensation Appeals Board, and her workers' compensation benefits were finally terminated on September 13, 2005.

On October 18, 2005, shortly after the adverse decision of the Employees' Compensation Appeals Board, Jessie contacted the Postal Service's EEO office for the first time. She alleged discrimination on the bases of race, sex, physical disability, and retaliation, which she alleged occurred on September 13, 2005, when she received the Employees' Compensation Appeals Board's decision denying her claim for compensation. The Postal Service EEO office denied her claim on the ground that it was a collateral attack on the Office of Worker's Compensation decision and therefore did not state a claim cognizable under Title VII.

After the dismissal of her EEO claim, on March 3, 2006, Jessie filed a Title VII complaint in the district court against the Postal Service and John E. Potter, as Postmaster General. Jessie appeared pro se, and her complaint consisted of about three pages of allegations, followed by twenty-eight pages of evidentiary materials. Most of the substantive allegations were in paragraph eight of the complaint, in which she alleged that on and around May 15, 2000, she needed crutches, grab bars, and a wheelchair, but she was told by Postal Service employees that she could not have them at her Post Office branch. She further alleged that this decision was reversed by the Office of Worker's Compensation hearing officer, but that the Postal Service then "bought an opinion from an alleged health care provider." She does not plead what the "alleged health care provider" said in his opinion, but the implication is that he opined that she could work. Paragraph ten listed her injuries, which included "chronic and acute clinical depression, anxiety, post traumatic stress, and eating disorders."

The Postal Service moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for summary judgment. Jessie filed a response including more than fifty pages of evidentiary material, and the district court granted

both the motion to dismiss and the motion for summary judgment. The district court held,

> It is undisputed that Plaintiff did not initiate contact with a[n EEO] Counselor in a timely fashion. Plaintiff retired from the Postal Service in May of 2002, but did not initiate contact with the EEO until October of 2005.

The court rejected Jessie's argument that the period for contacting an EEO counselor was tolled because she was mentally incapacitated, holding, "Plaintiff's condition was not sufficiently dire to excuse a three year lapse." Accordingly, the court granted the summary judgment and dismissed the complaint.

On appeal, Jessie argues that she was "physically and emotionally incapacitated" during the time when she should have contacted the EEO counselor, and therefore the district court erred in entering judgment against her on limitations grounds. Instead, she contends, the district court should have held an evidentiary hearing.

At the outset, we must clarify the procedural question of what kind of order we are reviewing–dismissal for lack of subject-matter jurisdiction, dismissal for failure to state a claim, or summary judgment. Jessie argues that she is entitled to an evidentiary hearing, relying on Briley v. Carlin, 172 F.3d 567, 570-71 (8th Cir. 1999), in which a plaintiff suing a federal agency relied on equitable tolling to obviate the forty-five-day deadline for contacting an EEO counselor. In Briley, the district court considered the motion to dismiss under Fed. R. Civ. P. 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction. Id. at 570. Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. Osborn v. United States, 918 F.2d 724, 728-30 (8th Cir. 1990). When a Rule 12(b)(1) ruling resolves disputed facts, the court can take evidence at a

-4-

hearing, and we review the judge's findings for clear error. Id. at 730. In contrast, a dismissal for failure to state a claim must be decided on the pleadings, Fed. R. Civ. P. 12(b), and a motion for summary judgment may not resolve disputed fact issues, Fed. R. Civ. P. 56(c), and both the latter type of rulings are reviewed de novo on appeal. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697-98 (8th Cir. 2003) (Rule 12(b)(6)); Green v. City of St. Louis, 507 F.3d 662, 666 (8th Cir. 2007) (summary judgment). In Briley, the district court held a hearing and resolved disputed facts; we affirmed the district court's dismissal under Rule 12(b)(1), reviewing for clear error, but without discussing whether the question was properly one of subject matter jurisdiction. See 172 F.3d at 570-71. However, more recently in Coons v. Mineta, 410 F.3d 1036, 1038-40 (8th Cir. 2005), we considered another case in which the district court had dismissed a federal employee's Title VII claim for failure to contact an EEO counselor within forty-five days. There, we observed that in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), the Supreme Court held that the requirement of timely filing an EEOC charge was not a jurisdictional prerequisite under Title VII. 410 F.3d at 1040. Accordingly, in Coons we applied the de novo standard of review appropriate for a Rule 12(b)(6) motion, id. at 1039, and we reversed because the complaint stated facts that supported the inference that the plaintiff did not know a discriminatory action had been taken against him and therefore was entitled to equitable tolling. Id. at 1040-42. We held that the district court could not dismiss such a complaint on the pleadings, but would have to resolve disputed facts. Id. at 1042.

In this case, unlike Briley, the district court did not purport to decide the motion to dismiss under Rule 12(b)(1). There is some ambiguity as to whether the district court dismissed the case under Rule 12(b)(6) for failure to state a claim or entered a Rule 56 summary judgment against Jessie. The opinion states only the standard for a Rule 12(b)(6) motion to dismiss, but the final paragraph purports to grant both the motion to dismiss and the summary judgment motion. Because there are

complexities[2] lurking in the question of whether dismissal under Rule 12(b)(6) would be appropriate for a plaintiff's failure to plead tolling, and because the district court entered summary judgment for the Postal Service as well as the Rule 12(b)(6) dismissal, we will review this case as a summary judgment and leave to another day

---

[2]Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. See John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, 753 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense, Gomez v. Toledo, 446 U.S. 635, 640 (1980), and therefore the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. See Varner v. Peterson Farms, 371 F.3d 1011, 1017-18 (8th Cir. 2004) (dismissal proper because complaint ruled out tolling of statute of limitations).

However, these principles may be misleading in a Title VII case. The Tenth Circuit has recently held that compliance with Title VII's time limit for filing a charge with the EEOC is a condition precedent to suit, which must be pleaded and proved by the plaintiff, rather than an affirmative defense, which must be pleaded and proved by the defendant. Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1167 (10th Cir. 2007) (citing Lawrence v. Cooper Cmties., Inc., 132 F.3d 447, 451 (8th Cir. 1998)). But see Payan v. Aramark Mgmt. Servs. Ltd P'ship, 495 F.3d 1119, 1122-23 (9th Cir. 2007) ("[B]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."); Colbert v. Potter, 471 F.3d 158, 165 (D.C. Cir. 2006) ("[A] statute of limitations defense under Title VII is an affirmative defense. Therefore, [the defendant] bears the burden of pleading and proving it.") (internal citations and quotation marks omitted). One of the cases on which the Tenth Circuit relies in Montes, Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1010 (11th Cir. 1982), explains that conditions precedent must only be averred generally in a complaint and that a defendant must deny satisfaction of such conditions specifically and with particularity. The question of which party has what burden of pleading has not been briefed before us, and we express no opinion on it because we treat the case as a summary judgment.

the question of whether a Rule 12(b)(6) dismissal would also be proper when a plaintiff fails to plead a basis for tolling in the complaint.[3]

Under the summary judgment standard, the district court could enter judgment for the Postal Service only if, on the record before it, there was no genuine question of material fact and the Postal Service was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The same regulation that imposes the requirement of contacting an EEO counselor provides that the time limit shall be extended when the complainant was prevented by circumstances beyond his or her control from contacting the counselor within the specified time. 29 C. F. R. § 1614.105(a)(2); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996). The majority of circuits to consider the question have concluded that mental disability can be a ground for equitable tolling generally in federal law. Barrett v. Principi, 363 F.3d 1316, 1319-21 (Fed. Cir. 2004) (collecting cases). In particular, courts have held that mental disability can toll the time in which an employment discrimination claimant must file a discrimination suit, Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir. 2002); Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998); file an administrative complaint, Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 37-39 (1st Cir. 2001); or contact an EEO counselor, Miller, 77 F.3d at 191; Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000).

_____

[3]We will also leave to another day the question of how a disputed fact question relating to the tolling question would be resolved. In Smith-Haynie v. District of Columbia, 155 F.3d 575, 578-79 (D.C. Cir. 1998), the D.C. Circuit raised the possibility that equitable tolling should be decided by a judge, not a jury, even if there are disputed questions of fact. The First Circuit held that the question of equitable tolling is for a judge, and therefore the court instructed the district court to hold a hearing before trial to resolve the disputed tolling issues. Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 38-39 (1st Cir. 2001). We express no opinion on this issue because we ultimately decide there was no disputed issue of fact.

The circuits have differed somewhat in the standards they apply to decide when tolling is warranted on the basis of mental disability. The Second Circuit has declined to formulate a rule, but instead holds that the question is "highly case-specific." Boos, 201 F.3d at 184 & n.7. This emphasis on equitable discretion is consistent with our approach to equitable tolling in general in Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1330 (8th Cir. 1995), where we said, "It would . . . be inconsistent with the concept of equity to lay down hard and fast rules governing when [tolling] relief would be available." However, despite our emphasis on discretion, we do not read Dring as eschewing the adoption of a standard altogether, but only as advocating flexibility.

Other circuits have developed a federal standard analogizing from state law regarding tolling for mental incapacity. See generally Barrett, 363 F.3d at 1320-21; Smith-Haynie, 155 F.3d at 579; Nunnally v. MacCausland, 996 F.2d 1, 5 (1st Cir. 1993). Under these cases, the "hurdle is high." Smith-Haynie, 155 F.3d at 579. Tolling is appropriate only if the mental illness actually prevents the plaintiff from understanding his or her legal affairs and from complying with the time limit. Miller, 77 F.3d at 191. A diagnosis of mental illness is not enough to justify tolling without evidence that the illness actually prevented the plaintiff from complying with the deadline. Id. at 191-92 (reasoning that even serious mental illnesses are treatable); Nunnally, 996 F.2d at 5; see also Dautremont v. Broadlawns Hosp., 827 F.2d 291, 296 (8th Cir. 1987) (in action under 42 U.S.C. § 1983, no tolling where the plaintiff was "cognizant of his rights" even though he was a patient in a mental hospital, with a diagnosis of schizophrenia). While we have emphasized that state tolling standards are not applicable when there is a federal statute of limitations, see Garfield v. J.C. Nichols Real Estate, 57 F.3d 662, 665-66 (8th Cir. 1995), in light of other circuits' reliance on state law, we observe that Missouri law is consistent with the federal standard that has emerged. Missouri law tolls statutes of limitations if the plaintiff was mentally incapacitated at the time the cause of action accrued. Mo. Rev. Stat. § 516.170. "Mentally incapacitated" means that the person was "deprived of his

reasoning faculties" or that he was "incapable of understanding or acting with discretion in the ordinary affairs of his life." Kellog v. Kellog, 989 S.W.2d 681, 685 (Mo. Ct. App. 1999).  To warrant tolling under Missouri law, the plaintiff must show that the disability in fact prevented him from bringing suit.  Id.  We conclude that a plaintiff seeking tolling on the ground of mental incapacity must come forward with evidence that a mental condition prevented him from understanding and managing his affairs generally and from complying with the deadline he seeks to toll.

The record before us does not substantiate Jessie's contention that she suffered from a mental disability that prevented her from managing her own affairs generally or specifically from contacting an EEO counselor within forty-five days from May 15, 2000, the date she identified in her complaint as the time when the alleged instances of discrimination by the Postal Service occurred.  Nor, indeed, does she establish mental incapacitation at any other time.  One of the medical opinions describing her disabilities mentions "depression," but it gives no further information that would shed light on whether the depression affected her ability to understand her legal rights or act upon them.  See Miller, 77 F.3d at 191 (diagnosis of mental illness not sufficient to warrant tolling without evidence of actual effect on ability to manage affairs).  Although she filed one letter in which she herself opined that she lacked "mental capacity" to pursue a worker's compensation hearing, she has filed no medical records or opinions indicating that she was deprived of her reasoning faculties or was incapable of understanding or managing her affairs.  See Vance v. Stevens, 930 F.2d 661, 662 (8th Cir. 1991) (affirming summary judgment for defendant on tolling issue where plaintiff "failed to provide the affidavits of his treating physicians or other experts to establish a genuine issue of material fact for trial as to his mental disability.").

Jessie's own evidence disproves the notion that she could not manage her business, since she filed exhibits showing that she pursued her workers' compensation claim pro se and requested disability retirement from the Postal Service.  Moreover,

with her opposition to the summary judgment motion, she filed a letter she sent to the Office of Workers' Compensation Programs, dated May 23, 2001, in which she described her ongoing efforts to apply for suitable jobs and stated that she had returned to college to update her job skills. See Miller, 77 F.3d at 192 (plaintiff's attendance at college during relevant time rebutted claim of incapacity).

Because of the lack of medical or other evidence showing her to be mentally incapacitated and the evidence positively showing that she actively managed her own affairs, this record would not support an inference that Jessie was mentally disabled or that any such disability kept her from contacting an EEO counselor. The district court did not err in entering summary judgment against Jessie on the ground that she had failed to contact an EEO counselor within the specified time.

Because we affirm on the ground cited by the district court, we need not consider the Postal Service's alternative argument that this Title VII case is an impermissible collateral attack on the Office of Workers' Compensation's decision under the Federal Employees' Compensation Act.

The judgment of the district court is affirmed.

_____