# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3692

_____

John Maxwell Montin,                    *
                                        *
    Plaintiff - Appellant,              *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   District of Nebraska.
The Estate of Dale Johnson; Bill Zinn;  *
Jessie Rassmensen; Barbra Ramsey,       *
                                        *
    Defendants,                         *
                                        *
Bill Gibson; Christine Peterson,        *
                                        *
    Defendants - Appellees.             *

_____

Submitted: November 17, 2010
Filed: April 11, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

In late 1993, John Maxwell Montin was adjudicated not guilty by reason of insanity on charges of false imprisonment and use of a weapon to commit a felony. Since early 1994, he has been involuntarily committed at a secure psychiatric facility, the Lincoln Regional Center ("Center"). In 1996 and 1998, the Center altered its policies regarding hierarchical categories of liberty afforded its residents, allegedly

restricting residents' ability to move about the grounds at the Center or, in limited situations, travel offsite.

In 2007, Montin filed the present action asserting the Center's amendment of its policies in 1996 and 1998 resulted in ongoing operation of the facility in a manner that deprives him of liberty in violation of due process and equal protection rights guaranteed by the United States and Nebraska constitutions. Montin seeks monetary and declaratory relief. He also seeks injunctive relief in order to restore a degree of liberty equivalent to or greater than that which he enjoyed prior to the 1996 and 1998 amendments. The district court dismissed his complaint as untimely, finding the cause of action accrued no later than 1998 and finding Montin's insanity did not provide a basis for tolling the applicable statute of limitations.

We vacate the district court's order and remand for further proceedings.

I.

In 1996, a sex offender escaped from the Center. In response, the Center temporarily suspended certain privileges related to all residents' freedom of movement. Prior to the escape, the Center had a policy regarding residents' liberty that provided five categories of freedom of movement labeled "Codes," with Code-1 providing the least liberty and most security and Code-5 providing the most liberty. The differences in the degree of liberty afforded residents pursuant to these categories appears to have been meaningful. Code-1 provided very little freedom of movement, and Code-2 permitted movement about Center grounds with one-to-one staff supervision. Other Code levels permitted increasing freedom of movement and decreasing supervision up to Code-5 which permitted unsupervised off-site liberty for certain purposes such as work or school. Before the sex offender escaped in 1996, Montin enjoyed Code-4 privileges.

Immediately after the escape, the Center suspended Code-4 privileges, apparently as a general policy applicable to all residents. Montin alleges that, in 1998, during an annual review by a state trial court, the court along with his "treatment team" approved an overall plan that should have permitted him to enjoy Code-5 privileges. The Center, however, permanently eliminated Code-4 and Code-5 categories as a Center-wide policy in 1998. Accordingly, the Center granted Montin only Code-3 status.

In December 2007, acting pro se, Montin filed the present suit pursuant to 42 U.S.C. § 1983 alleging violations of his equal protection and due process rights and seeking counsel. The district court denied counsel, and Montin continued on a pro se basis. In the complaint and in an amended complaint, Montin named as defendants several Center officials in their individual capacities. In addition, he named two defendants in their official capacities, Center CEO Bill Gibson and Nebraska Department of Health and Human Services Director Christine Peterson. In 2009, the district court dismissed all claims against the defendants in their individual capacities because Montin failed to properly serve the individual defendants.

Peterson and Gibson moved for summary judgment alleging the complaint was untimely pursuant to the applicable statute of limitations. In their brief in support of the motion, defendants conceded that Montin had asserted equitable tolling due to his mental status as an argument against the application of a statute of limitations. Montin filed a resistance in which he appears to have raised several arguments concerning the dismissed defendants. In the same resistance, he also argued that the statute of limitations does not apply to cut off his claims for injunctive relief concerning his ongoing conditions of confinement. In addition, Montin moved for an evidentiary hearing regarding his mental capacity as related to the issue of equitable tolling. In support of his motion for an evidentiary hearing, he filed an affidavit and a treating psychatrist's report in which the psychiatrist claimed Montin was "delusional" about legal matters and was "out of touch with reality."

-3-

The district court granted summary judgment based upon the statute of limitations without granting Montin's motion for an evidentiary hearing. The court determined that the applicable statute of limitations was four years and that Montin's cause of action accrued no later than the Center's 1998 permanent change in policy. The court did not address the issue of whether the statute of limitations precluded a present claim for injunctive relief concerning ongoing restrictions to Montin's liberty and his current conditions of confinement. The court did address the issue of equitable tolling. The court cited a psychiatrist's report provided by the defendants as supporting the view that Montin was of sufficiently sound mind to understand and assert his interests. The court also cited different lawsuits Montin had filed between 1998 and 2007 as evidence that he was capable of bringing grievances for adjudication. The court, ultimately, held Montin's mental condition did not justify equitable tolling of the limitations period.

In addressing the tolling issue, the court raised the evidence of other lawsuits sua sponte, and the parties did not have an opportunity to present arguments concerning the contents of the earlier lawsuits or the inferences that should be drawn from those lawsuits. Further, the court appears to have overlooked Montin's affidavit and the psychiatrist's report Montin submitted with his motion for an evidentiary hearing. The court stated in its written order of dismissal that Montin did "not submit any evidence in response to [Defendant's psychiatrist's] Affidavit."

Montin appealed to our court, and the defendants moved for summary affirmance. A panel of our court denied the motion for summary affirmance and specifically ordered briefing as to the issue of whether there existed a factual question surrounding Montin's mental condition as material to the issue of tolling.[1] On appeal, Montin renewed his argument that the statute of limitations cannot cut off his ability

---

[1]Our prior panel granted a motion to dismiss the appeal as to all defendants Montin failed to properly serve (all defendants other than Gibson and Peterson).

to seek injunctive relief for allegedly unconstitutional and continuing restrictions to his liberty. Defendants did not address this issue, asserting instead that our order as to briefing limited the issue on appeal solely to the issue of equitable tolling. To provide an opportunity to address both issues (equitable tolling and the applicability of the statute of limitations to Montin's specific claim for injunctive relief), we ordered the parties to file supplemental briefs discussing these issues. The parties filed the requested briefs, and the case is now submitted.

## II.

### A.   Standard of Review

We review a grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party. Brandt v. Davis, 191 F.3d 887, 891 (8th Cir. 1999).

The parties agree that, to the extent any present claims are subject to a statute of limitations, the applicable limitations period is four years. See Neb. Rev. Stat. § 25-207; Bridgeman v. Neb. State Pen, 849 F.2d 1076, 1077 (8th Cir. 1988). The parties also agree that the last date reflecting a change in policy by the Center concerning the availability of the Code-4 or Code-5 categories for resident liberties was in 1998. The parties dispute whether this date is the relevant date for limitations purposes, i.e., the date on which Montin's claim accrued, or whether each day of continued confinement without Code-4 and Code-5 liberties comprises an ongoing and renewed violation of Montin's rights. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). For a § 1983 action, however, the issue of equitable tolling, like the underlying statute of limitations, is determined by reference to state law. See Hardin v. Straub, 490 U.S. 536, 539 (1989).

B.    Equitable Tolling

Nebraska Revised Statutes § 25-213 provides:

> [I]f a person entitled to bring any action mentioned in Chapter 25 . . . is, at the time the cause of action accrued, within the age of twenty years, a person with a mental disorder, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by Chapter 25 after such disability is removed.

Montin presents two arguments in support of equitable tolling pursuant to this statute. First, he argues evidence submitted below proves he qualifies for tolling based upon Nebraska's own interpretation of the term "mental disorder" as found in section 25-213. Second, he argues he should be deemed, as a matter of law, to qualify for tolling as an involuntarily committed individual being held in a secure psychiatric facility following a judgment of not guilty by reason of insanity.

Regarding his first argument, we hold remand is required. As used in section 25-213, a "mental disorder" is a condition rendering a plaintiff "incapable of understanding his legal rights or instituting legal action," or "evaluat[ing] and communicat[ing] information necessary to protect [his] rights." Kraft v. St. John Lutheran Church, 414 F.3d 943, 948 (8th Cir. 2005). Here, the record contains evidence overlooked by the district court that creates a genuine question of fact regarding the issue of Montin's mental condition between 1998 and 2007: Montin's treating psychiatrist's report accompanying the request for an evidentiary hearing. A reasonable finder of fact could infer from all of the evidence submitted that Montin is lucid as to certain matters, but as the treating psychiatrist reported, delusional as to others (his legal rights in particular) and "out of touch with reality."

On remand, the court should consider all of the evidence submitted and also offer Montin the opportunity to present arguments concerning the inferences to be

drawn based upon the other lawsuits cited by the district court. Neither party presented records from these other cases to the district court, and it is not clear that these cases—all lost by Montin—actually support the inference that he was capable of understanding and asserting his legal rights in a meaningful way. Viewed in a light most favorable to Montin, a series of dismissed actions filed by an involuntarily committed person who is delusional about his legal rights could be evidence of an *inability* to communicate and assert his rights. The court's sua sponte notice of and reliance upon such records without affording an opportunity for arguments cannot be viewed as harmless where the conclusions to be drawn from such records could support Montin's position.

Regarding Montin's second argument, entitlement to tolling as a matter of law, we leave this issue for consideration by the district court in the first instance. Our court has rejected a similar argument when applying Iowa's tolling statute. Dautremont v. Broadlawns Hosp., 827 F.2d 291, 296 (8th Cir. 1987) (interpreting Iowa Code Ann. § 614.8 (Supp. 1987)). Our Iowa case is not controlling, however, because tolling in this context is a matter of state law, and the Iowa statute is not at issue in the present case.

Typically, on summary judgment, the court's role is to determine the existence of any triable questions of material fact, not to resolve such questions. For factual questions surrounding a plaintiff's mental capacity as relevant to the equitable issue of tolling, however, it is not clear that factual questions are to be left to juries. We previously have stated that an evidentiary hearing is required if a plaintiff sufficiently pleads facts to justify the equitable tolling of a statute of limitations. Lyons v. Potter, 521 F.3d 981, 983 (8th Cir. 2008) ("[W]hen a complainant alleges sufficient facts which, if taken as true, establish a claim of equitable tolling, a court must give the complainant the opportunity to submit evidence on the issue."); see also McMillian v. Miss. Lime Co., 311 F. App'x 942, 943 (8th Cir. 2009) (per curiam) (evidentiary hearing not required where "allegations did not establish a claim for equitable

tolling"); Jessie v. Potter, 516 F.3d 709, 714–15 (8th Cir. 2008) (affirming grant of summary judgment in absence of hearing where record permitted only one view of issue). We have not expressly stated whether the district court itself is to resolve the issue if genuinely disputed questions of material fact remain after holding such a hearing.

Arguably, we could imply from the requirement to hold an evidentiary hearing that the court is to resolve the question. We previously noted, however, that our circuit has not resolved the question of who—judges or juries—should decide factual questions behind the equitable issue of tolling due to mental illness. Jessie v. Potter, 516 F.3d at 713 n.3. In Jessie v. Potter, in fact, we purposely avoided addressing the issue because the record in that case compelled the conclusion that equitable tolling should not apply. Id. ("We will also leave to another day the question of how a disputed fact question relating to the tolling question would be resolved.").

In different contexts, we have appeared to resolve the issue of equitable tolling on appeal without indicating whether we were resolving a factual dispute or finding the absence of a triable question. See, e.g., Shempert v. Harwick Chem. Corp., 151 F.3d 793, 798 (8th Cir. 1998) (declining to apply equitable tolling). At other times, it has seemed clear that we were resolving a factual dispute. See Lawrence v. Cooper Communities, Inc., 132 F.3d 447, 451–52 (8th Cir. 1998) (reversing district court's denial of equitable tolling and stating, "[W]e find sufficient evidence to equitably toll the statute of limitations period"). In still other settings, we have refused to reverse where the issue was submitted to the jury. See e.g., Marvin Lumber & Cedar Co. v. PPG Indus., 401 F.3d 901, 916–17 (8th Cir. 2005) (finding no abuse of discretion in submitting jury instructions regarding the equitable tolling of a statute of limitations in a breach of warranty/contract case between a manufacturer and a supplier).

There is authority from other circuits going both ways, and the issue, as narrowly defined in the setting of equitable tolling due to alleged mental incapacity,

is squarely before us in the present case.  Compare Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 39 (1st Cir. 2001) ("[O]n remand the judge should hold whatever hearing may be called for and decide the ultimate question whether equitable tolling is appropriate."), with Ott v. Midland-Ross Corp., 600 F.2d 24, 31 (6th Cir. 1979) (remanding for trial and instructing that the jury rather than the court should be permitted to determine the issue of equitable tolling, albeit on grounds other than mental incapacity).  We adopt the view of the First Circuit and make explicit what previously we may merely have implied: the court rather than the jury is to resolve the factual questions surrounding a plaintiff's mental state as relevant to the equitable tolling of a statute of limitations.  This seems to be a natural consequence of the fact that tolling, as an equitable consideration, is a court-issued remedy.  See, e.g., Salitros v. Chrysler Corp., 306 F.3d 562, 573 (8th Cir. 2002) ("In fashioning equitable relief, the district court may take into account facts that were not determined by the jury, but it may not base its decision on factual findings that conflict with the jury's findings."); Nat'l Am. Ins. Co. v. Hogan, 173 F.3d 1097, 1103, 1109 (8th Cir. 1999) (approving a court's treatment of a jury finding as advisory when made relevant to an equitable issue).  Further, as discussed by the First Circuit, the factual question at issue is more akin to the type of issues courts resolve at competency hearings than the type of issues ultimately resolved by juries when addressing the merits of a case.  See Melendez-Arroyo, 273 F.3d at 39 ("These are matters calling for assessments that a judge may be far better able to make than a jury.").

     C.    Continuing Violations / Applicability of Statute of Limitations to Claims for Injunctive Relief.

Not every plaintiff is deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to condition or policy.  In addressing a Sherman Act claim, the Court stated:

> We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on Hanover. Although Hanover could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955.

Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968) (citation omitted).

This is particularly true where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth Amendment claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme. See, e.g., Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001) ("[The refusal to provide medical treatment to an inmate] continued for as long as the defendants had the power to do something about his condition . . . . Every day that they prolonged his agony . . . marked a fresh infliction of punishment that caused the statute of limitations to start running anew."); Bazemore v. Friday, 478 U.S. 385, 395 (1986) ("Each week's paycheck that delivers less to a [black person] than to a similarly situated [white person] is a wrong actionable under Title VII . . . .") (Brennan, J., concurring, joined by all other members of the Court).

If it were clear that Montin's complaint related solely to the creation of the current security policy in 1998, we would have little difficulty rejecting the continuing violations theory. See, e.g., High v. Univ. of Minn., 236 F.3d 909, 909 (8th Cir. 2000) ("This court has never applied the continuing violations doctrine to a discrete act, such as failure to promote, and we decline to do so now."). Montin appears to allege, however, that he suffers daily and unconstitutional restrictions of his liberty of movement. Cf., Kuhnle Bros., Inc. v. Cnty. of Geauga, 103 F.3d 516, 521–22 (6th Cir. 1997) (applying the continuing-violations theory to a due process

-10-

claim alleging deprivation of a liberty interest in interstate travel related to an ordinance banning trucking on certain roads, and stating, "each day that the invalid resolution remained in effect, it inflicted continuing and accumulating harm on Kuhnle" (internal quotation marks omitted)); Va. Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989) ("[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations."). His claim, therefore, may be akin to a prisoner's Eighth Amendment claim or claims involving repeated enforcement of policies against a plaintiff rather than claims alleging merely ongoing consequences from an older, challenged action.

Ultimately, we believe this issue presents a question of claim accrual. In the present setting, claim accrual depends not only on Montin's underlying factual allegations, but on the nature of the claim asserted and the specific details of what he alleges to be unconstitutional. At a minimum, he alleges an unconstitutional and ongoing deprivation of a liberty interest granted by a state statute requiring the Center to place Montin "in the least restrictive available treatment program that is consistent with the treatment needs of the person and the safety of the public." Neb. Rev. Stat. § 29-3702(2).

Out of prudence, we believe it is appropriate to allow the district court to address this issue in the first instance. This will permit adequate vetting through the adversarial process and avoid having the appellate court "try the action de novo." Empire Dist. Elec. Co. v. Rupert, 199 F.2d 941, 945 (8th Cir. 1952); see also O'Neil v. City of Iowa City, 496 F.3d 915, 918 (8th Cir. 2007) (remanding a legal issue for initial consideration by the district court). We find this approach particularly fitting because Montin acted pro se below and his filings, although sufficient, lacked clarity; counsel has been appointed on appeal and can assist on remand; remand already is appropriate for other reasons; the case, initially, proceeded without a hearing; and further development of the claims and record may be needed to address the issue of

continuing violations. We make no comment as to the merits of Montin's "continuing violation" argument.

Finally, we also make no comment as to the merits of the underlying constitutional claims themselves, and nothing in this opinion should be interpreted as prohibiting the court from entertaining substantive arguments or dispositive motions as to the ultimate merits of the underlying claims.

We vacate the judgment of the district court and remand for further proceedings.

_____