# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1118

_____

Annex Medical, Inc.; Stuart Lind; Tom Janas

*Plaintiffs - Appellants*

v.

Sylvia Mathews Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services; Thomas E. Perez, in his official capacity as Secretary of the United States Department of Labor; Jacob J. Lew, in his official capacity as Secretary of the United States Department of Treasury; United States Department of Health and Human Services; United States Department of Labor; United States Department of Treasury

*Defendants - Appellees*[1]

------------------------------

Association of American Physicians & Surgeons; American Association of Pro-Life Obstetricians & Gynecologists; Christian Medical Association; Catholic Medical Association; National Catholic Bioethics Center; Physicians for Life; National Association of Pro-Life Nurses; Liberty, Life, and Law Foundation; Breast Cancer Prevention Institute; Bioethics Defense Fund; Life Legal Defense Foundation; Association of Gospel Rescue Missions; Christian Legal Society; The C12 Group; Patrick Henry College; National Association of Evangelicals; Ethics and Religious Liberty Commission of the Southern Baptist Convention; Institutional Religious Freedom Alliance; Prison Fellowship Ministries; The Right

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the following automatic substitutions of public officers occur: Secretary Burwell for Kathleen Sebelius, Secretary Perez for Seth D. Harris (who previously was automatically substituted for Hilda Solis), and Secretary Lew for Timothy Geithner.

Reverend W. Thomas Frerking, OSB; Missouri Roundtable For Life; Minnesota Catholic Conference; Bradley P. Jacob; Charles E. Rice; Common Good Foundation; Common Good Alliance; Catholic Online, LLC; Sharpe Holdings, Inc.; Charles N. Sharpe; Eagle Forum Education and Legal Defense Fund

*Amici on Behalf of Appellants*

Physicians for Reproductive Health; National Women's Law Center; American College of Obstetricians and Gynecologists; American Society for Emergency Contraception; American Federation of State, County and Municipal Employees; Association of Reproductive Health Professionals; Feminist Majority Foundation; American Society for Reproductive Medicine; Ibis Reproductive Health; Society for Adolescent Health and Medicine; MergerWatch; American Medical Women's Association; NARAL Pro-Choice America; National Association of Nurse Practitioners in Women's Health; NARAL Pro-Choice Minnesota; Society of Family Planning; NARAL Pro-Choice Missouri; James Trussell; NARAL Pro-Choice South Dakota; Susan F. Wood; National Organization for Women Foundation; Don Downing; National Partnership for Women and Families; Kathleen Besinque; Planned Parenthood of the Heartland; Planned Parenthood of Kansas & Mid-Missouri; Planned Parenthood Minnesota, North Dakota, South Dakota; Planned Parenthood of the St. Louis Region and Southwest Missouri; Population Connection; Raising Women's Voices for the Health Care We Need; Service Employees' International Union; Lambda Legal Defense and Education Fund; National Health Law Program; Mexican American Legal Defense and Educational Fund; Asian Pacific American Legal Center; Black Women's Health Imperative; Forward Together; National Hispanic Medical Association; Ipas; Sexuality Information and Education Council of the U.S.; Campaign to End AIDS; HIV Law Project; National Women and AIDS Collective; Housing Works; Americans United For Separation of Church and State; Union for Reform Judaism; Central Conference of American Rabbis; Women of Reform Judaism; Hindu American Foundation; American Civil Liberties Union; American Civil Liberties Union of Minnesota; Anti-Defamation League; Catholics for Choice; Hadassah, the Women's Zionist Organization of America, Inc.; Interfaith Alliance Foundation; National Council of Jewish Women; Religious Coalition for Reproductive Choice; Religious Institute; Unitarian Universalist Association; Unitarian Universalist Women's Federation

*Amici on Behalf of Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 24, 2013
Filed: September 5, 2014
_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.
_____

RILEY, Chief Judge.

In this Religious Freedom Restoration Act (RFRA) case challenging the U.S. Department of Health and Human Services (HHS) contraceptive mandate under 42 U.S.C. § 2000bb-1(a),[2] Annex Medical, Inc. (Annex), Stuart Lind, and Tom Janas appeal the district court's refusal to enjoin preliminarily the government from enforcing the mandate.

---

[2]Pursuant to the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 300gg-13(a)(4), HHS promulgated regulations requiring "group health plan[s]" and "health insurance issuer[s] offering group or individual health insurance coverage" to cover, without "any cost-sharing requirements," "[w]ith respect to women, . . . evidence-informed preventive care and screenings provided for in binding comprehensive health plan coverage guidelines supported by the Health Resources and Services Administration." 45 C.F.R. § 147.130(a)(1)(iv) (2013). At the recommendation of the Institute of Medicine, HHS adopted guidelines providing that nonexempt employers generally must provide "coverage, without cost sharing, for all Food and Drug Administration (FDA) approved contraceptive methods, sterilization procedures, and patient education and counseling." 77 Fed. Reg. 8725, 8726 (Feb. 15, 2012) (internal marks and quotations omitted).

## I.    BACKGROUND

Annex is a for-profit Minnesota corporation and at the time of filing had sixteen full-time employees and two part-time employees. When Annex filed this lawsuit, one of the ways Annex compensated its employees was by paying for a Blue Cross and Blue Shield of Minnesota (Blue Cross) group health insurance plan. This health plan covered contraceptives and had included such coverage for years.

Lind is the controlling shareholder of Annex. On religious grounds, Lind opposes both abortion and the use of contraceptives. Lind asserts he did not know the plans Annex purchased for its employees historically offered coverage for contraceptives. After Lind learned the Blue Cross plan contained this coverage, Annex continued to pay for its employees' participation in the plan until Annex cancelled the policy as of January 31, 2013. At some point before canceling the policy, Lind asked Blue Cross "to exclude coverage for contraception, sterilization, abortifacient drugs and related education and counseling." Although the Blue Cross plan was "*not* currently subject to" the regulation, Blue Cross itself refused to eliminate such coverage. (Emphasis added). Lind contacted three other Minnesota insurers, none of whom would sell Annex a plan without contraceptive coverage. According to Lind, no insurer would offer Annex such coverage even after this court issued a temporary injunction pending appeal.

At issue here is the district court's denial of Annex and Lind's motion for a preliminary injunction respecting the contraceptive mandate's enforcement. Before the Supreme Court issued its opinion in Burwell v. Hobby Lobby Stores, Inc., 573 U.S. ___, 134 S. Ct. 2751 (2014), the district court considered the four Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc), factors, and concluded the factors weighed in favor of the government. The district court denied the motion.

## II.  DISCUSSION

### A.  Janas

Although Janas appears on the notice of appeal, he did not join the preliminary injunction motion which forms the basis for this appeal.  Its denial did not leave him personally "aggrieved."  Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980).  Because Janas has "no 'direct stake' in the outcome of th[is] appeal," he lacks standing to appear before us.  Hollingsworth v. Perry, 570 U.S. ___, ___, 133 S. Ct. 2652, 2662 (2013) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997)); see also 28 U.S.C. § 1292(a)(1).  Without opining whether Janas's "plans to purchase another business in 2013" gave him standing to participate in the underlying case, cf. Clapper v. Amnesty Int'l USA, 568 U.S. ___, ___, 133 S. Ct. 1138, 1147 (2013), we dismiss his appeal.

### B.  Annex and Lind

With respect to Annex and Lind, we find a different standing issue.  According to the pleadings, Annex has fewer than fifty full-time employees, which means Annex has no government-imposed obligation to offer health insurance of any kind—let alone the contraceptive coverage to which Lind objects.  See 26 U.S.C. § 4980H(a), (c)(2).  And if Annex—a "small employer"—chooses to offer insurance from a health insurer anyway, Annex cannot be penalized if the insurance is inconsistent with the contraceptive mandate.  Id. § 4980D(d).  Because the mandate does not apply to Annex, the only alleged injury is that independent third parties—private health insurance companies not involved in this case—are unable to sell Annex a health insurance plan that excludes healthcare inconsistent with Lind's religious beliefs.  See 45 C.F.R. § 147.130(a)(1)(iv) (applying the mandate not only to group health plans, but also to "health insurance issuer[s]").

The standing problem is the pleadings and record contain no indication any Minnesota health insurer is willing, but for the mandate, to sell a plan allowing a small employer such as Annex to prohibit coverage for a handful of healthcare products and

services.  What few indications appear on the record are to the contrary.  The complaint alleges Annex's current insurer (whose grandfathered plan, unaffected by the mandate, covered contraceptives) would "not permit Annex[] to modify its group health plan to omit such coverage because [the insurer] requires all group health plans issued to employers with fewer than 50 employees to include such coverage."  Pending this appeal, our court preliminarily enjoined the federal defendants "from enforcing the mandate . . . against Lind, Annex[], and *any health insurance issuer* when offering group health insurance coverage to Annex."  Annex Med., Inc. v. Sebelius, No. 13-1118, 2013 WL 1276025, at *3 (8th Cir. Feb. 1, 2013) (unpublished order) (emphasis added).  Yet Lind informs us "the injunction has not enabled him to purchase" a plan conforming with his religious beliefs.  According to Annex and Lind, "Group plan providers are *unwilling* to exclude some or any of the mandated coverage from their plans or do not currently offer a plan that excludes these items and are *unwilling* to submit such a plan to the Minnesota Department of Commerce for approval."  (Emphasis added).

RFRA does not allow the federal government substantially to burden Lind's religious beliefs, as exercised through his closely-held corporation.  See Hobby Lobby, 573 U.S. at ___, ___, 134 S. Ct. at 2779, 2785.  But in protecting Lind's exercise of religion, RFRA cannot injure the rights of other private parties.  See City of Boerne v. Flores, 521 U.S. 507, 535-36 (1997); see also id. at 536-37 (Stevens, J., concurring); id. at 537-44 (Scalia, J., concurring).  Whether for political, moral, religious, administrative, or purely profit-driven reasons, health insurance issuers are free under RFRA to decline Annex's business.  See 41 U.S.C. § 2000bb-1(a) (applying RFRA only to the "Government"); City of Boerne, 521 U.S. at 535-36 (limiting RFRA to the federal government).

Ultimately, it is unclear whether Annex's alleged injury is caused by the government defendants and redressable by the federal courts.  Article III requires Annex to prove "'an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  United States v. Juvenile Male, 564 U.S. ___, ___,

131 S. Ct. 2860, 2863 (2011) (per curiam) (quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998)).  Based on the pleadings and sparse record before us, we can only speculate whether Annex's difficulties obtaining contraceptive-free insurance are (1) caused by the government defendants as opposed to the independent decisions of third-party insurers, and (2) redressable by the remedy available to Annex: a permanent version of the preliminary injunction Annex already received and which failed to redress Annex's alleged injury.  Yet "[t]ime and again the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III." <u>Wallace v. ConAgra Foods, Inc.</u>, 747 F.3d 1025, 1031 (8th Cir. 2014).

Rather than resort to such speculation, we believe it best to vacate the district court's denial and remand the case for additional analysis.  <u>See</u>, <u>e.g.</u>, <u>Peske v. Tangedahl</u>, 619 F.2d 729, 731 (8th Cir. 1980) (per curiam) (expressing our doubts as to jurisdiction but vacating and remanding in light of the district court's failure to consider the issue); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Spencer v. Stork</u>, 513 F. App'x 557, 558 (6th Cir. 2013) (per curiam); <u>Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Prot.</u>, 550 F.3d 1121, 1134 (Fed. Cir. 2008); <u>United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.</u>, 30 F.3d 298, 307 (2d Cir. 1994).  This will allow the district court to use its superior fact-finding abilities to determine, in the first instance, whether subject matter jurisdiction exists. <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>Jessie v. Potter</u>, 516 F.3d 709, 712 (8th Cir. 2008) ("When a Rule 12(b)(1) ruling resolves disputed facts, the court can take evidence at a hearing."); <u>Faibisch v. Univ. of Minn.</u>, 304 F.3d 797, 801 (8th Cir. 2002) (affirming a district court's determination under Rule 12(b)(1), based on "factual determinations about the availability of th[e plaintiff's requested] relief," that the plaintiff lacked standing).

## III. CONCLUSION

We dismiss Janas's appeal, and as to Annex and Lind, we vacate the district court's order and remand for further proceedings, beginning with the parties' Article III standing.[3]

COLLOTON, Circuit Judge, concurring in the judgment.

The district court's order denying a preliminary injunction should be vacated, and the case remanded for further proceedings, but not for the reasons given by the panel majority. There is an Article III case or controversy between Annex Medical, Inc. and the United States over the government's mandate that any group health insurance plan issued to Annex Medical must include coverage to which Annex Medical and its owner, Stuart Lind, object on religious grounds. The Affordable Care Act authorized the Department of Health and Human Services to promulgate regulations governing group health plans, and HHS issued regulations that include the disputed mandate. *See* 26 U.S.C. § 4980D; 42 U.S.C. § 300gg-13(a)(4); 45 C.F.R. § 147.130.

The district court denied Annex Medical's motion for a preliminary injunction against the HHS mandate, concluding that "the Mandate places only a de minimis, not substantial, burden on plaintiffs' practice of religion" under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.* The district court reasoned that the government's requiring indirect financial support of a practice that violates the business owner's religious principles does not constitute a "substantial burden" on the exercise of religion. In *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014),

---

[3]On July 1, 2014, Annex and Lind filed a citation letter with this court, pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, identifying and quoting the Supreme Court's decision in Hobby Lobby. Because we remand this case on standing grounds, we need not, and do not, express an opinion on the impact of Hobby Lobby on the current case.

however, the Supreme Court concluded that where business owners and their companies "sincerely believe that providing the insurance coverage demanded by the HHS regulations lies on the forbidden side of the line," it is not for the courts "to say that their religious beliefs are mistaken or insubstantial." *Id.* at 2779. The Court also observed that the business owners and for-profit companies in that case—like Lind and Annex Medical—had "religious reasons for providing health-insurance coverage for their employees," and that foregoing insurance coverage likely would place the companies at "a competitive disadvantage in retaining and attracting skilled workers." *Id.* at 2776-77. Accordingly, I would vacate the district court's order and remand the case for further consideration in light of *Hobby Lobby*.

The majority, on its own initiative, decides instead that there is an Article III "standing problem" that must be addressed by the district court, because the record includes "no indication any Minnesota health insurer is willing, but for the mandate, to sell a plan allowing a small employer such as Annex to prohibit coverage for a handful of healthcare products and services." The "problem" is illusory; the record at this stage of the litigation establishes that Annex Medical has standing to challenge the HHS mandate. The government agreed in the district court that Annex Medical has standing. The district court accepted the position of the parties and exercised jurisdiction over the case. *Annex Medical, Inc. v. Sebelius*, No. 12-2084, 2013 WL 101927 (D. Minn. Jan. 8, 2013). A three-judge panel of this court exercised jurisdiction over this appeal and entered a preliminary injunction pending appeal. *Annex Medical, Inc. v. Sebelius*, No. 13-1118, 2013 WL 1276025 (8th Cir. Feb. 1, 2013). There is no good cause at this point to second-guess the existence of a case or controversy.

Annex Medical is injured because the HHS mandate excludes it from participating in the market for group health insurance. The company wants to propose a transaction and develop a business relationship with an insurer, but the issuers are forbidden by federal law to consider Annex Medical's proposal. A declaration that the mandate is contrary to RFRA and an injunction against its enforcement would

redess that injury. *See Clinton v. City of New York*, 524 U.S. 417, 432-33 & n.22 (1998); *Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999).

Annex Medical also is injured because it is unable to purchase a health insurance plan for its employees without the coverage to which it objects on religious grounds. A plaintiff's burden to establish standing depends on the stage of litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This case is at the pleading stage; the government has not even filed an answer. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (internal quotation omitted).

Annex Medical alleged in its complaint that none of the several health insurance issuers whom it approached "was able to offer [the desired] group plan *because* no such plan can exist as a result of the Mandate." R. Doc. 1, ¶ 88 (emphasis added). According to the complaint, "[t]he Mandate *strips Annex Medical of any choice* to select an insurance plan that does not cover and finance contraception, sterilization, and abortifacient drugs and related education and counseling." *Id*. ¶ 89 (emphasis added). The complaint alleged that "*[a]s a result of the Mandate*, Annex Medical cannot currently offer a group health plan to its employees that accords with and does not violate Plaintiffs' sincerely-held religious beliefs." *Id*. ¶ 90 (emphasis added).

These general allegations embrace the specific facts necessary to support the claim—that is, that the desired plan would exist without the mandate, and that Annex Medical would have a choice to select the desired insurance plan from an issuer if the government did not forbid the transaction. If, as alleged, the unavailability of a group health plan without the objected-to coverage is "a result of the Mandate," then it follows in ordinary usage that the HHS mandate is a but-for cause of the desired plan's unavailability. *See Burrage v. United States*, 134 S. Ct. 881, 887-88 (2014). The government recognized as much in the district court, saying "we are not challenging plaintiffs' standing to bring the case," because "insurance companies are

flexible," and "it seems very possible that they could find some way to get a plan in place" if the HHS regulations were enjoined. R. Doc. 56, at 25-26. Annex Medical thus alleged sufficiently that the mandate is the cause of its inability to obtain the desired group health insurance, and that declaratory relief and a permanent injunction of the HHS mandate would redress the company's injury.

If more is needed, it should be evident that a market to serve Annex Medical is likely to develop if the requested relief is granted. It is unsurprising that insurers were not prepared to write policies for Annex Medical and submit them to state regulators for approval based on a temporary injunction pending appeal of indefinite duration while the law was unsettled. But the complaint seeks *permanent* injunctive and declaratory relief that the government cannot forbid the issuance of the group plan that Annex Medical wants to purchase. Health insurance plans without the objected-to coverage already exist for religious employers and non-profit religious organizations that were exempted under pre-*Hobby Lobby* regulations. *See* 45 C.F.R. § 147.131. The Department of Health and Human Services says the accommodation sought by Annex Medical is cost-neutral for insurers. *See Hobby Lobby*, 134 S. Ct. at 2782 n.38. And the Department, in light of *Hobby Lobby*, has proposed rules to offer the requested accommodation to closely held for-profit entities that have religious objections to providing coverage for some or all contraceptive services. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 79 Fed. Reg. 51,118 (proposed Aug. 27, 2014).

Annex Medical is not required to deliver to the district court a proposed insurance plan from a third-party carrier to establish standing. A plaintiff need demonstrate only that its injury is "likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). At the pleading stage, the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Turkish Coalition of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012). Annex Medical alleged that its inability to procure the desired group health insurance plan is "a result of" the

HHS mandate, and that the mandate "strips Annex Medical of any choice" to select its preferred plan. The majority's speculation that *every* insurance company—despite the cost-neutrality of the requested accommodation—might refuse to issue a policy to Annex Medical for "political, moral, religious, administrative, or purely profit-driven reasons" is contrary to the allegations in the complaint and cannot defeat Annex Medical's standing to challenge the HHS mandate.

Like the government, I conclude that there is an Article III case or controversy. The district court's order denying a preliminary injunction should be vacated in light of *Hobby Lobby*.

_____