# United States Court of Appeals
### For the Eighth Circuit
_____

No. 17-1265
_____

James Humphrey; Ollie Humphrey

*Plaintiffs - Appellants*

v.

Eureka Gardens Public Facility Board; C. Ray Roberts; City of North Little Rock,
By and Through its Wastewater Department; Michael Marlar; Marlar Engineering
Company Inc.

*Defendants - Appellees*

Department of Agriculture

*Defendant*

Lawrence McCullough, Arkansas State Director for the U.S. Department of Agriculture

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 9, 2018
Filed: June 6, 2018
_____

Before LOKEN, BEAM, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Husband and wife James and Ollie Humphrey appeal after the district court[1] dismissed their 42 U.S.C. § 1983 complaint as time-barred. We affirm.

I. Background

In 2009, the Eureka Gardens Public Facility Board (Board) decided that a new sewer system would be constructed in the Eureka Gardens community, located near the City of North Little Rock, Arkansas. An engineer's report initially proposed that gravity sewer systems be installed at all Eureka Gardens residences. The Board submitted that report to the U.S. Department of Agriculture (USDA), and the USDA approved funding to assist with construction of the system, subject to USDA approval of any changes to the engineer's initial design. The design was subsequently changed such that five residences would receive grinder sewer systems instead. Unlike gravity systems, grinder systems use electric-powered pumps, making them more expensive to operate and maintain. African-American families lived at four of the five residences that were to receive grinder systems under the modified plan.

The Humphreys, who are African-American, own two of the Eureka Gardens residences that were designated to receive grinder systems. In October 2011, they signed a contract, which provided that grinder pumps would be installed at each of their Eureka Gardens properties. In the contract, the Board agreed to install the grinder pumps as well as lines connecting the pumps to the sewer system's main sewage lines, and to do so at no cost to the Humphreys. In return, the Humphreys agreed to install electrical lines to power each pump and to maintain the pumps once they were installed. Construction of the new sewer system was completed in

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

November 2013. The City of North Little Rock Wastewater Department (NLRWD) operates, maintains, and repairs the new sewer system, and it charges all residents of Eureka Gardens—including the Humphreys and the other grinder pump recipients—a uniform rate to do so. It does not operate, maintain, or repair the grinder pumps.

In May 2016, the Humphreys filed this lawsuit against the Board; Board Chairman C. Ray Roberts; the City of North Little Rock; Michael Marlar, the engineer who designed the sewer system; Marlar Engineering Company; and the USDA (collectively, Defendants). In their verified complaint, as amended, the Humphreys assert that Defendants violated their constitutional rights to procedural due process, substantive due process, and equal protection. Defendants filed a motion to dismiss the complaint as time-barred under Federal Rule of Civil Procedure 12(b)(6), which the district court granted.

## II. Discussion

"A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011). "[T]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Id. (quoting Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010)). "We review de novo whether a statute of limitations bars a party's claim." Smithrud v. City of St. Paul, 746 F.3d 391, 395 (8th Cir. 2014). Arkansas's three-year statute of limitations for personal-injury actions applies to the Humphreys' § 1983 claims. See Ketchum v. City of West Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (Arkansas's 3-year personal-injury statute of limitations governs § 1983 actions brought in that state); see also Ark. Code Ann. § 16–56–105. Thus, the Humphreys were required to file their lawsuit within three years of the date their claims accrued. Section 1983 claims accrue "when the plaintiff

has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007) (cleaned up).

Our resolution of this dispute is guided by Delaware State College v. Ricks, 449 U.S. 250 (1980), and Chardon v. Fernandez, 454 U.S. 6 (1981) (per curiam). In Ricks, a college professor filed a Title VII complaint alleging he was denied tenure based on his national origin. 449 U.S. at 254. The college notified the professor that the tenure committee had voted to deny him tenure, but did not terminate his employment until a year later. Id. at 252–53. The Supreme Court held that the professor's complaint was time-barred under Title VII's statute of limitations, as the professor's claim had accrued once he was notified of the allegedly discriminatory decision to deny him tenure, not when he was actually terminated. Id. at 257–58. According to the Court, "the only alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the tenure decision was made and communicated to [the professor]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." Id. at 258 (footnote omitted). The professor's termination was not a "continuing violation" of Title VII, but was instead "a delayed, but inevitable, consequence of the denial of tenure." Id. at 257–58. In Chardon, the Court extended the reasoning of Ricks to determine the accrual date for a § 1983 claim of discriminatory termination. 454 U.S. at 7–8. More specifically, the Court held that the decision to terminate was the allegedly discriminatory act, and that the employee's claims accrued when he was notified of that decision, even though he was not actually terminated until a later date. Id. at 8.

Applying the same principles here, the Humphreys' claims accrued in October 2011, when they were notified of the allegedly discriminatory decision to install the grinder systems instead of gravity systems at their residences. The installation of the pumps and the Humphreys' continuing responsibility for the additional expenses they

entail, like the professor's ultimate termination in <u>Ricks</u>, are delayed, but inevitable, consequences of that decision.

According to the Humphreys, their claims did not accrue in October 2011, because they lacked standing to bring their claims at that time. We disagree. When the Humphreys learned of the allegedly discriminatory decision in October 2011, they could have sought declaratory or injunctive relief, and later added demands for compensatory damages once they incurred actual financial harm. <u>See</u> <u>Chardon</u>, 454 U.S. at 8; <u>id.</u> at 9 (Brennan, J., dissenting) ("The thrust of the Court's decision is to require a potential civil rights plaintiff to measure the time for filing his claim from the moment some form of injunctive relief first becomes available.").

In an effort to avoid the accrual rule established in <u>Ricks</u> and <u>Chardon</u>, the Humphreys characterize their ongoing obligation to power and maintain their grinder pumps as a continuing constitutional violation. In their view, the clock on the three-year limitations period resets each time they are charged NLRWD's uniform rate or pay to power and maintain their grinder pumps. They point to <u>Bazemore v. Friday</u>, an employment discrimination case in which African-American plaintiffs alleged they were being paid less than their similarly-situated white peers pursuant to a discriminatory compensation scheme. 478 U.S. 385, 395 (1986) (per curiam) (Brennan, J., concurring in part). In <u>Bazemore</u>, the Supreme Court explained that "[e]ach week's paycheck that delivers less to a black [person] than to a similarly situated white [person] is a wrong actionable under Title VII." <u>Id.</u> The Humphreys also cite to <u>Montin v. Estate of Johnson</u>, where this court explained:

> Not every plaintiff is deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to condition or policy. . . . This is particularly true where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth Amendment

claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme.

636 F.3d 409, 415 (8th Cir. 2011). In Montin, we found a continuing violation where a civilly-committed sex offender alleged he was "suffer[ing] daily and unconstitutional restrictions on his liberty of movement." Id. at 416. But we also indicated we would have rejected the continuing violations theory had the detainee's complaint related solely to the creation of the security policy that called for the restrictions on his movement. Particularly, we explained, "[t]his court has never applied the continuing violations doctrine to a discrete act, such as failure to promote, and we decline to do so now." Id. at 415–16 (quoting High v. Univ. of Minn., 236 F.3d 909, 909 (8th Cir. 2000)). Unlike the plaintiffs in Bazemore and Montin, the Humphreys have not identified any continuing unconstitutional policy or restraint. Instead, they complain of the delayed, but inevitable, consequences of the allegedly discriminatory decision to install the grinder systems, of which they had notice in October 2011.

## III. Conclusion

The Humphreys' claims are time-barred because they accrued in October 2011, the limitations period expired in October 2014, and the Humphreys did not file this lawsuit until May 2016. Accordingly, the judgment is affirmed.

_____