# United States Court of Appeals
## For the First Circuit

No. 23-2069

JENNIFER COTTO, on behalf of herself and all others similarly
situated; JAMIE KIMBALL, on behalf of herself and all others
similarly situated; DAVID CUMMINGS, on behalf of himself and all
others similarly situated; TODD MOTON, on behalf of himself and
all others similarly situated; and TRAVIS MORAN, on behalf of
himself and all others similarly situated,

Plaintiffs, Appellees,

STACY FOSTER, on behalf of herself and all others similarly
situated; JONATHAN RILEY, on behalf of himself and all others
similarly situated; and NICOLE WESTCOTT, on behalf of herself
and all others similarly situated,

Plaintiffs,

v.

ANDREA J. CAMPBELL, Attorney General; TIMOTHY SHUGRUE, Berkshire
County District Attorney; THOMAS M. QUINN, III, Bristol County
District Attorney; ROBERT J. GALIBOIS, II, Cape and Islands
District Attorney; PAUL TUCKER, Essex County District Attorney;
ANTHONY GULLUNI, Hampden County District Attorney; MARIAN RYAN,
Middlesex County District Attorney; MICHAEL W. MORRISSEY,
Norfolk County District Attorney; DAVID E. SULLIVAN,
Northwestern District Attorney; TIMOTHY J. CRUZ, Plymouth County
District Attorney; KEVIN R. HAYDEN, Suffolk County District
Attorney; JOSEPH D. EARLY, JR, Worcester County District
Attorney; THOMAS G. AMBROSINO, Administrator of the Trial Court;
and JOHN MAWN, JR., Massachusetts State Police Interim
Superintendent,

Defendants, Appellants,

COMMONWEALTH OF MASSACHUSETTS; BROCKTON POLICE DEPARTMENT, on
behalf of itself and all other police departments similarly
situated; FALL RIVER POLICE DEPARTMENT, on behalf of itself and
all other police departments similarly situated; BOSTON POLICE
DEPARTMENT, on behalf of itself and all other police departments

similarly situated; SPRINGFIELD POLICE DEPARTMENT, on behalf of itself and all other police departments similarly situated; CHARLIE BAKER, Governor; DEBORAH B. GOLDBERG, Treasurer; EDWARD DOLAN, Commissioner of Probation; and DANIEL BENNETT, Secretary of the Executive Office of Public Safety and Security,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

---

Before

Rikelman, Lynch, and Kayatta,
Circuit Judges.

---

Christine Fimognari, Assistant Attorney General, with whom Andrea Joy Campbell, Attorney General of Massachusetts, and Anne Sterman and Katherine B. Dirks, Assistant Attorneys General, were on brief, for appellants.

Daniel N. Marx, with whom William W. Fick, Luke Ryan, Fick & Marx LLP, and Strehorn, Ryan & Hoose were on brief, for appellees.

---

January 21, 2025

---

**RIKELMAN, Circuit Judge.** For almost a decade, two state chemists in Massachusetts tampered with drug evidence and falsified test results, undermining the reliability of forensic evidence in tens of thousands of drug cases. After their egregious misconduct was discovered, the Massachusetts Supreme Judicial Court (SJC) vacated and dismissed with prejudice over 30,000 criminal cases tainted by their actions. Eventually, the SJC also determined that, under the Fourteenth Amendment to the U.S. Constitution, affected individuals were entitled to the repayment of most funds collected as a consequence of their now-vacated convictions, but not to the automatic return of any forfeited property seized in connection with those convictions. See Commonwealth v. Martinez, 109 N.E.3d 459, 471-76 (Mass. 2018). Instead, because of the different legal standards and procedures necessary for a conviction as opposed to a forfeiture order, the SJC held that individuals seeking return of their property would need to file motions for relief from judgment under Rule 60(b) of the Massachusetts Rules of Civil Procedure. See id. at 475-76.

Plaintiffs in this case, dissatisfied with the SJC's ruling on the forfeiture issue, request a federal court order that would essentially require the automatic return of their forfeited property. They also seek related relief, such as an accounting of all forfeited property and additional procedural protections in Rule 60(b) proceedings. The Commonwealth defendants moved to

- 3 -

dismiss the complaint on several grounds, including that plaintiff's claims were barred by the Eleventh Amendment, which prohibits suits in federal court against a state by its own citizens. The district court dismissed the complaint in part. It held that it could not order the automatic return of plaintiffs' forfeited property, but that plaintiffs' other claims could proceed under the Ex parte Young exception to the Eleventh Amendment, which permits suits against state officials in federal court in certain circumstances. The Commonwealth defendants appealed.

We conclude that the Eleventh Amendment bars all the relief sought by plaintiffs. Plaintiffs' attempt to recover their forfeited property focuses on a past alleged wrong, but the Ex parte Young exception applies only when individuals seek prospective relief against a state official's ongoing violation of federal law. Because there is no ongoing violation to anchor plaintiffs' various claims, there is no prospective or ancillary relief to grant. Plaintiffs' claim for additional procedural protections in state court also cannot proceed under Ex parte Young because the state officials they sued lack the authority to enforce or change those procedures. We therefore reverse the district court's partial denial of the motion to dismiss and remand with instructions to dismiss the case in full.

- 4 -

## I. BACKGROUND

### A. Relevant Facts

This case arises from the criminal actions of two former state forensic chemists, Annie Dookhan and Sonja Farak, who tampered with evidence, falsified drug results, and committed perjury in state court drug cases beginning in about 2004. After their misconduct was discovered a decade later, the SJC vacated and dismissed with prejudice over 30,000 drug cases tainted by their involvement.

Two individuals whose criminal convictions had been vacated due to Dookhan's misconduct each raised a federal due process claim in state court and asked for the return of fees, victim-witness assessments, restitution, fines, and court costs associated with their convictions, as well as any civilly forfeited assets. See Martinez, 109 N.E.3d at 466-69. The SJC held that the Due Process Clause of the Fourteenth Amendment required the automatic return of most funds paid as a consequence of their convictions, but not the forfeited assets that were seized under a civil statute, section 47 of chapter 94C of the Massachusetts General Laws ("State Act"). Id. at 471-76.

The SJC reasoned that the Due Process Clause did not require the automatic return of forfeited assets because plaintiffs' civil forfeiture judgments were not solely a consequence of their invalidated drug convictions. Id. at 476.

As the court explained, because "[t]he finding of probable cause of nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the criminal proceeding of sufficient evidence to warrant a finding of guilt," the issue of relief from a civil forfeiture judgment must be "separately litigated [by each impacted individual] . . . through a motion for relief from judgment under [Rule] 60(b)." Id. The Martinez plaintiffs did not file a petition for certiorari to the U.S. Supreme Court appealing that decision.

## B. Procedural History

Plaintiffs here were criminal defendants in drug cases impacted by the chemists' misconduct. They brought this case on behalf of themselves and other similarly situated individuals, arguing primarily that defendants' continued withholding of plaintiffs' forfeited property after the SJC vacated their underlying drug convictions violates the Eighth and Fourteenth Amendments of the U.S. Constitution. The original defendants included the Massachusetts Attorney General, the eleven district attorneys in the Commonwealth, the administrator of the state trial court, and the interim superintendent of the state police, as well as four local police departments as representatives of a broader class of law enforcement agencies. Because the district court dismissed the claims against the local police departments under Monell v. Department of Social Services of New York, 436 U.S. 658

(1978), and plaintiffs have not cross-appealed,[1] we focus our discussion on the claims against the Commonwealth defendants.

In their complaint, plaintiffs seek a variety of declaratory and injunctive relief. They request (i) a declaratory judgment that class members are "entitled to the return of all Forfeited Property that was taken from them in connection with their vacated, wrongful convictions" and injunctions ordering (ii) the "return of all Forfeited Property," (iii) notice to all class members, (iv) "a full accounting of all Forfeited Property," and (v) the implementation of "an efficient, effective, and fair process to return all Forfeited Property."

The Commonwealth defendants filed a motion to dismiss the complaint, arguing that plaintiffs' claims were barred by the Eleventh Amendment (and also failed for other reasons). The district court partially granted and partially denied the motion, dismissing on Eleventh Amendment grounds plaintiffs' claim for an injunction ordering the return of their forfeited property but allowing their other claims to proceed. Cotto v. Campbell, No. 18-CV-10354, 2023 WL 7496514, at *6-8 (D. Mass. Nov. 13, 2023). In the remaining claims, plaintiffs sought "notification of [class members'] rights to a more robust state procedure under the State

_____

[1] Plaintiffs filed a cross-appeal on the district court's partial grant of the motion to dismiss but are no longer seeking interlocutory review.

- 7 -

Act, or their rights to pursue relief under Rule 60(b)," "a full accounting of all Forfeited Property," and "additional procedural due process protections within a Rule 60(b) hearing."[2]  Id. at *8.

The Commonwealth defendants now appeal the partial denial of their motion to dismiss.  They correctly contend that we have jurisdiction under the collateral order doctrine to review the district court's order to the extent it denied dismissal on Eleventh Amendment immunity grounds.  See Doe v. Shibinette, 16 F.4th 894, 899-900, 903-905 (1st Cir. 2021) (reviewing under collateral order doctrine denial of motion to dismiss on Eleventh Amendment grounds where state official argued district court erred in concluding lawsuit fit within the Ex parte Young exception).

## II. STANDARD OF REVIEW

We review de novo a district court's denial of a motion to dismiss based on Eleventh Amendment immunity.  See id. at 903.

## III. DISCUSSION

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of another state, or

---

[2]  The district court did not directly discuss whether plaintiffs' claim for declaratory relief survived its partial dismissal order, although it did note that "the court is not barred from entertaining Plaintiffs' constitutional challenges" for "relief other than an order from this court directing the payment of money from the state."  Cotto, 2023 WL 7496514, at *8.  Both parties assume plaintiffs' claim for a declaratory judgment survived the partial dismissal order and address the claim on appeal, so we do as well.  See infra Section III.B.3.

- 8 -

citizens of a foreign nation. U.S. Const. amend. XI; Hans v. Louisiana, 134 U.S. 1, 10, 15 (1890). This bar applies to suits against state agencies and departments, as well as to suits that are nominally against state officials but where the state is "the real, substantial party in interest" because the relief sought "would operate against [the state]." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984) (first quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945); and then quoting Hawaii v. Gordon, 373 U.S. 57, 58 (1963) (per curiam)).

In its landmark decision of Ex parte Young, 209 U.S. 123 (1908), however, the Supreme Court established a critical exception to the bar on suits in federal court against state officials. As applied by the Supreme Court, Ex parte Young permits a federal court to prohibit a state official from enforcing state law in a way that violates federal law. Edelman v. Jordan, 415 U.S. 651, 664 (1974). The Court justified this exception by explaining that state laws that conflict with the federal Constitution, for example, are "void" and cannot "impart to [the official] any immunity," thereby permitting a lawsuit against a state official enforcing such a state law. Green v. Mansour, 474 U.S. 64, 68 (1985) (alteration in original) (quoting Ex parte Young, 209 U.S. at 159-60); see also Papasan v. Allain, 478 U.S. 265, 276-77 (1986) (same). Thus, under Ex parte Young, the Eleventh Amendment permits federal courts to issue prospective

relief that enjoins state officials from committing future violations of federal law, but not retrospective relief that "make[s] reparation for the past." Edelman, 415 U.S. at 664-65 (quoting Rothstein v. Wyman, 467 F.2d 226, 236-37 (2d Cir. 1972), cert. denied, 411 U.S. 921 (1973)). Specifically, the Ex parte Young exception applies if a plaintiff (1) "alleges an ongoing violation of federal law" by a state official[3] and (2) "seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)

---

[3] To be clear, the Ex parte Young exception can also apply when plaintiffs bring what is known as a pre-enforcement challenge, alleging an anticipated (as opposed to an ongoing) violation of federal law, against state officials with the authority to prevent those violations (e.g., by not enforcing the challenged laws). See, e.g., Planned Parenthood Great Nw. v. Labrador, 122 F.4th 825, 841-43 (9th Cir. 2024) (holding that Ex parte Young applies to pre-enforcement suit against state attorney general who has the "authority to assist in the enforcement of [the allegedly unconstitutional statute]"); Frank v. Lee, 84 F.4th 1119, 1132-33 (10th Cir. 2023) (holding that Ex parte Young applies to pre-enforcement suit against state officials who have "some connection with the enforcement" of the statute at issue (quoting Hendrickson v. AFSCME Council 18, 992 F.3d 950, 965 (10th Cir. 2021))). Ex parte Young itself involved a pre-enforcement challenge. See 209 U.S. at 129, 146-48 (enjoining state official from enforcing state statute based on anticipated violation of due process, in response to lawsuits filed the day before the statute was to take effect). Plaintiffs here did not file a pre-enforcement suit, so our analysis focuses on whether any violation is ongoing, rather than anticipated. And to the extent plaintiffs raise claims about potential future due process violations that could arise during the Rule 60(b) procedures in state court, plaintiffs cannot pursue such claims against the Commonwealth defendants under Ex parte Young because those defendants have no authority to enforce or change those procedures. See infra Section III.C.

(O'Connor, J., concurring)). Plaintiffs do not meet either requirement.

Although plaintiffs attempt to characterize the Commonwealth defendants' continued withholding of forfeited property as an ongoing violation, the district court correctly concluded that plaintiffs had alleged only a past wrong rather than an ongoing one. And without an ongoing violation and future misconduct to enjoin, there is no prospective relief or ancillary relief for a federal court to grant. Finally, plaintiffs' request for additional procedural protections in state court fails under Ex parte Young because plaintiffs sued state officials who lack the authority to enforce or change these procedures.[4] Thus, we conclude that the Eleventh Amendment bars all the plaintiffs' claims.

---

[4] The parties dispute whether Ex parte Young contains an additional and independent requirement that the relief sought does not "operate against" the state as "the real, substantial party in interest," see Pennhurst, 465 U.S. at 101, or whether Ex parte Young is itself a carveout from the "general rule" that the Eleventh Amendment bars suits where the state is the real party in interest, see id. at 102. To the extent the parties identify any tension in the precedent on this point, we do not need to resolve their dispute in this case. Regardless of how the test is formulated, Ex parte Young makes clear that a federal court cannot order relief unless the state officials sued have "some connection with the enforcement of the [allegedly unconstitutional] act," a requirement that plaintiffs cannot meet here for their request for additional procedural protections in Rule 60(b) hearings. 209 U.S. at 157. See infra Section III.C.

## A. Ongoing Violation of Federal Law

Because the Ex parte Young exception is intended to balance Eleventh Amendment concerns with the supremacy of federal law, it only applies in "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." Papasan, 478 U.S. at 277-78 (emphasis added). Plaintiffs argue that they meet this standard, citing allegations from their complaint that the Commonwealth defendants' "continued withholding" of forfeited property after plaintiffs' convictions were vacated is an "ongoing violation" of the Eighth and Fourteenth Amendments. Plaintiffs also contend that defendants' arguments to the contrary are irrelevant because the application of Ex parte Young does not include an analysis of the merits.

Plaintiffs misunderstand the Ex parte Young doctrine. We start with plaintiffs' second contention, that the Commonwealth defendants lodge an impermissible merits argument by pointing out that plaintiffs have not alleged an ongoing violation. That is incorrect. The merits argument excluded from the Ex parte Young analysis is whether the state officials' actions are, in fact, "inconsistent with federal law." Verizon Md., 535 U.S. at 646. Thus, the merits question that is irrelevant in this appeal is whether the Commonwealth defendants' continued withholding of forfeited assets violates the Eighth and Fourteenth Amendments.

By contrast, the question defendants ask us to analyze is, even assuming their withholding does violate the Constitution, whether any violation is ongoing.

We conclude that the district court's ruling on this point was correct: There may be a continuing liability for a past harm, but there is no ongoing violation here. The district court explicitly rejected plaintiffs' argument that "Defendants' failure to return their forfeited property is a continuing violation of federal law," noting that "Plaintiffs' argument that repayment would remedy a continuing wrong rather than a past one is unpersuasive." Cotto, 2023 WL 7496514, at *6-7. As the court explained, "[t]his sort of 'formal distinction' between Defendants' [alleged] 'continuing obligation' to remedy their legal violation and their 'ongoing liability' for a past injury is 'of the sort [the Supreme Court] rejected' in articulating its retroactive relief test." Id. at *7 (quoting Papasan, 478 U.S. at 280).[5]

Indeed, the Supreme Court has foreclosed plaintiffs' argument. In both Edelman v. Jordan and Papasan v. Allain, it held that state officials' continued withholding of past benefits, even if wrongful, amounted to a past wrong and not an ongoing

---

[5] We also note that plaintiffs did not cross-appeal the district court's ruling that defendants' continued withholding of their forfeited property did not qualify as an ongoing violation.

- 13 -

violation for Ex parte Young purposes.  In Edelman v. Jordan, plaintiffs argued that state officials violated federal law in calculating benefits under the Aid to the Aged, Blind, and Disabled (AABD) program and, citing Ex parte Young, requested an injunction ordering defendants "to award . . . all AABD benefits wrongfully withheld."  415 U.S. at 655-56.  The Supreme Court concluded there was no ongoing violation of federal law, explaining that plaintiffs' claims were merely for "a monetary loss resulting from [the state officials'] past breach of a legal duty."  Id. at 668; see Papasan, 478 U.S. at 280-81 (similarly noting that the Edelman plaintiffs' claims rested on "a not-yet-extinguished liability for a past breach").

The Supreme Court reaffirmed that the continued withholding of funds owed is not an ongoing violation in Papasan v. Allain.  In Papasan, plaintiffs challenged funding disparities between Chickasaw Cession schools and other Mississippi public schools by bringing a breach of trust claim.  478 U.S. at 274.  To establish that a breach of trust occurred, plaintiffs first contended that the federal government "created a perpetual [school lands] trust, with the State as trustee for the benefit of the public schools," when it granted land to the state and required it to use income from that land to fund local public schools.  Id. at 271-73, 279.  Plaintiffs then argued that Mississippi had a trust obligation to provide Chickasaw Cession schools with appropriate

- 14 -

trust income and sought related declaratory and injunctive relief. Id. at 274-75, 279. To fit such a suit within the Ex parte Young exception, plaintiffs claimed that the state's failure to make appropriate trust income payments to the Chickasaw schools in the past was an ongoing violation. Id. at 279.

The Supreme Court disagreed, finding no ongoing violation and explaining that plaintiffs' claim in Papasan failed for the same reason that the claim in Edelman did. Id. at 280-81 ("The [plaintiffs'] characterization in [Edelman] of the legal wrong as the continuing withholding of accrued benefits is very similar to the petitioners' characterization of the legal wrong here [in Papasan] as the breach of a continuing obligation to comply with the trust obligations."). According to the Court, plaintiffs merely identified past violations that amounted to "accrued monetary liabilit[ies]," so their claim was barred by the Eleventh Amendment. Id. at 281 (emphasis omitted) (quoting Milliken v. Bradley, 433 U.S. 267, 289 (1977)); see also Whalen v. Mass. Trial Ct., 397 F.3d 19, 29-30 (1st Cir. 2005) (finding "no continuing violation of federal law to enjoin" when laid-off employee asked for restoration of pension and retirement credit after reinstatement, because relief sought was designed to compensate him for his termination, a past injury (quoting Green, 474 U.S. at 71)).

Here, even if the Commonwealth defendants' continued withholding of plaintiffs' forfeited property did violate federal law, it would be a past violation, not an ongoing one. Just like the continued withholding of previously owed payments in Edelman and Papasan did not amount to ongoing violations, defendants' continued withholding of forfeited property does not qualify as an ongoing violation. Plaintiffs' claims rest on "the past actions of the [Commonwealth]," either from the time of their forfeiture proceedings or from the time their convictions were vacated, rather than any current or future actions. Papasan, 478 U.S. at 282. Therefore, plaintiffs have not alleged an ongoing violation of federal law and the Ex parte Young exception does not apply.

## B. Prospective Relief

Our holding that there is no ongoing violation of federal law also means that the relief plaintiffs seek is not prospective. We have defined Ex parte Young's prospective relief requirement to apply to relief that "serves directly to bring an end to a present violation of federal law." Whalen, 397 F.3d at 29 (quoting Papasan, 478 U.S. at 278). Because there is no such violation to end here, there is also no prospective relief for a federal court to grant. And because no prospective relief can be granted, the Supreme Court's exception for ancillary relief, which supports the implementation of "prospective relief already ordered by the court," also cannot save plaintiffs' claims for notice and

- 16 -

accounting relief. Green, 474 U.S. at 70-71 (quoting Quern v. Jordan, 440 U.S. 332, 349 (1979)). Finally, plaintiffs' request for a declaratory judgment providing that they are entitled to the return of their forfeited property is barred because it functions as a "partial 'end run' around" the prospective relief requirement. Id. at 73. Such a declaratory judgment would, in effect, amount to an order by a federal court for retrospective relief. Id. We discuss each of these points in more detail below.

### 1. No Ongoing Violation, so No Prospective Relief

Although Ex parte Young's prospective relief requirement is sometimes framed as distinct from its ongoing violation requirement, see Verizon Md., 535 U.S. at 645, the two requirements are closely related. As we described above, Ex parte Young permits federal courts to issue prospective relief that requires state officials "to conform [their] future conduct" to federal law, not retrospective relief that only "make[s] reparation for the past." Edelman, 415 U.S. at 664-65 (emphasis added). Without an ongoing violation to curtail, there are no prospective injunctions for a federal court to issue. See Green, 474 U.S. at 71 ("Because there is no continuing violation of federal law to enjoin in this case, an injunction is not available."). Thus, "[t]he pivotal question [under Ex parte Young] is whether the relief 'serves directly to bring an end to a present violation of federal law'" because a court cannot issue injunctive relief, no matter how "prospective"

it may appear, without such a violation. Whalen, 397 F.3d at 29 (emphasis added) (quoting Papasan, 478 U.S. at 278).

The district court characterized plaintiffs' requests for notice, accounting, and procedural protections as "classic examples of prospective injunctive relief" that "would not entail payment from the state treasury, and . . . bear[] no resemblance to a retroactive award of money." Cotto, 2023 WL 7496514, at *8. The court correctly held that an injunction requiring the payment of money from the state treasury would be impermissibly retrospective. But any injunctions for notice and accounting relief, as well as for additional procedural protections in state court, would not serve to end an ongoing violation of federal law because plaintiffs allege only a past wrong. See supra Section III.A. Thus, these requested injunctions cannot qualify as prospective relief.

### 2. Ancillary Relief

The Supreme Court also has upheld as consistent with the Eleventh Amendment "ancillary relief" that operates as a case-management device to assist the court with implementing valid, prospective relief already ordered. In Quern v. Jordan, it permitted lower courts to order notice relief "ancillary to" two valid forms of prospective relief: a declaratory judgment finding that current state regulations violated federal law by withholding benefits, and an injunction barring state officials from future

- 18 -

violations. See 440 U.S. at 336, 349; Edelman, 415 U.S. at 656 (precursor to Quern, describing relief sought). The Court permitted the notice because it supported the relief already granted by informing class members of existing state administrative procedures that could determine their eligibility for repayment; at the same time, the notice left the actual determination of individual claims "entirely with the State." Quern, 440 U.S. at 348.

Six years later, the Court granted certiorari in Green to answer one of the exact questions posed in this case: If "there is no ongoing violation of federal law," can federal courts still "order the giving of notice of the sort approved in Quern v. Jordan, . . . or issue a declaratory judgment that state officials violated federal law in the past"?[6] 474 U.S. at 67. The Court concluded that notice relief "is not the type of remedy designed to prevent ongoing violations of federal law," so it is unavailable when there is no prospective relief to which the notice can attach. Id. at 71. Ultimately, both Quern and Green make clear that federal courts can only grant relief that is not itself prospective under Ex parte Young when that relief is "ancillary to the

_____

[6] This section discusses Green's holding regarding notice relief. Section III.B.3 discusses Green's holding regarding declaratory relief.

- 19 -

prospective relief already ordered by the court."  Green, 474 U.S. at 70-71; Quern, 440 U.S. at 349.

Green is directly on point here.  Although plaintiffs argue that their requested injunctions for notice relief and a full accounting of all forfeited property qualify as "ancillary relief" that falls within the Ex parte Young exception, they are incorrect.  Just like in Green, there is no ongoing violation of federal law to enjoin in this case, so no prospective relief is available.  See supra Section III.A-III.B.1.  Because there is no prospective relief for the notice or accounting relief to attach to, "ancillary relief" is also not available.  Both forms of relief remain barred by the Eleventh Amendment.

### 3. "End Runs" Around the Prospective Relief Requirement

Plaintiffs' request for a declaratory judgment that they "are entitled to the return of all Forfeited Property that was taken from them in connection with their vacated, wrongful convictions" also does not fall within the Ex parte Young exception.  Such a judgment would serve only as a "partial 'end run' around" Edelman's prospective relief requirement.  Green, 474 U.S. at 73.

As the Supreme Court held in Green, declaratory judgments are barred as impermissible "end run[s]" around Ex parte Young's prospective relief requirement when their only use would consist of "be[ing] offered in state-court proceedings as res

- 20 -

judicata on the issue of liability." Id. Issuing a declaratory judgment in those circumstances would "have much the same effect as [issuing] a full-fledged award of damages or restitution," retrospective remedies that are clearly "prohibited by the Eleventh Amendment." Id. Such declaratory judgments, therefore, are also barred as retrospective.

Again, Green's reasoning directly applies to this case. Plaintiffs seek a declaratory judgment to establish "res judicata on the issue of liability" in their state court proceedings to recover forfeited property. Id. They propose to use the declaratory judgment to take the decision of whether to return the property out of the state's hands, "leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed." Id.; see also Quern, 440 U.S. at 348 (approving notice about available state administrative procedures because "whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court"). Thus, the declaratory judgment would function as an impermissible "end run" around Ex parte Young's prospective relief requirement by allowing a federal court to, in effect, order retrospective relief: the return of plaintiffs' forfeited property. As a result, plaintiffs' requested declaratory judgment is barred by the Eleventh Amendment.

## C. The "Some Connection" Requirement

The Commonwealth defendants present a final argument for why the Ex parte Young exception does not apply, specific to plaintiffs' request for additional procedural protections in state court: Defendants do not have the authority to enforce or change these procedures. We agree and find that plaintiffs' claim for additional procedural protections fails on this ground too.

Under Ex parte Young, plaintiffs may only seek relief from state officials with "some connection with the enforcement of the [allegedly unconstitutional] act." 209 U.S. at 157. Otherwise, plaintiffs would be "attempting to make the state a party." See id.; see also Shibinette, 16 F.4th at 904-05 (permitting claims under Ex parte Young where the state official sued has authority to grant the relief sought). Therefore, if an injunction against the Commonwealth defendants could not bring about the relief plaintiffs seek, the Ex parte Young exception does not apply.

Plaintiffs' requested injunction to "implement an efficient, effective, and fair process to return all Forfeited Property to Class Members" runs afoul of this requirement. Although the district court concluded that it could require "additional procedural due process protections within a Rule 60(b) hearing," the court did not address whether the Commonwealth defendants enforce these procedures or have the authority to change

them. Cotto, 2023 WL 7496514, at *8. And, as defendants explain, they do not have the authority to alter state court procedures.[7] Therefore, plaintiffs' request for an injunction requiring additional procedural protections in state court is prohibited by the Eleventh Amendment.

## IV. CONCLUSION

Like the SJC, we acknowledge the tremendous harm caused by Farak and Dookhan's egregious misconduct. But the Eleventh Amendment bars federal courts from providing the relief plaintiffs seek here. For these reasons, we **reverse** the district court's partial denial of the Commonwealth defendants' motion to dismiss and **remand** to the district court with instructions to dismiss the complaint in full.

---

[7] As a reminder, the Commonwealth defendants consist of the Massachusetts Attorney General, the eleven district attorneys in the Commonwealth, the administrator of the state trial court, and the interim superintendent of the Massachusetts State Police. These individuals cannot change state court procedures for Rule 60(b) hearings; only the SJC can.