# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3041

_____

Gillian Filyaw, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Steve Corsi, Chief Executive Officer of the Nebraska Department of Health and Human Services, in his official capacity; Drew Gonshorowski, Director of the Division of Medicaid and LongTerm Care, in his official capacity

*Defendants - Appellees*

------------------------------

Danielle C. Jefferis; American Civil Liberties Union of Nebraska

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2025
Filed: August 27, 2025

_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Gillian Filyaw alleged that the Nebraska Department of Health and Human Services (NDHHS) and officials from NDHSS (Defendants) deprived her and a class of Nebraskans of due process in terminating her Medicaid benefits without proper notice. The district court[1] dismissed her claims, finding no *Ex parte Young*[2] exception to sovereign immunity. We agree and affirm.

## I. *Background*

Medicaid is a federal and state funded program that provides medical coverage for certain people with limited income. Accepting the facts in Filyaw's complaint as true, she obtained Medicaid in the fall of 2020 administered through the NDHHS.

On April 18, 2024, prior to her coverage being terminated, Filyaw received a Notice of Action (Notice) from the NDHSS informing her that she was no longer eligible for Medicaid coverage because her "[i]ncome [e]xceed[ed] [s]tandards." R. Doc. 36-2, at 1. The Notice stated that she had a "right to request a conference with [N]DHHS to discuss the reason(s) for the action(s) indicated" and a "right to appeal for a hearing on any agency action or inaction on [her] application." *Id*. at 3. Furthermore, it stated Filyaw had "90 days following the date of this notice to request a fair hearing" and that

> [i]n cases of intended adverse action, where [N]DHHS is required to send you timely and adequate notice, if you request an appeal hearing within ten days following the date on this notice (or in a Medicaid case, before the effective date on this notice), [N]DHHS will not carry out the adverse action until a fair hearing decision is made . . . .

*Id*. (bold omitted). Filyaw alleged that the Notice is identical to notices of action the NDHHS has issued to 22,000 other Medicaid enrollees since April 1, 2023.

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

[2]209 U.S. 123 (1908).

Filyaw did not appeal the termination decision at the state level, and her health coverage terminated on May 1, 2024. On June 11, 2024, Filyaw filed her complaint for herself and a class of Nebraskans "who, since March 1, 2023, have been or will be issued a written notice from Defendants proposing to terminate their Nebraska Medicaid eligibility for the reason 'income exceeds standards.'" R. Doc. 1, at 5. Filyaw sued Defendants in their official capacity pursuant to 42 U.S.C. § 1983 and asked the district court to

> a) Certify this action as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure with respect to the proposed class identified herein;

> b) Pursuant to 42 U.S.C. § 1983 declare that the Income Termination Notices used by Defendants do not satisfy the requirements of due process and are therefore unconstitutional;

> c) Preliminarily and permanently enjoin Defendants from enforcing unconstitutional and unlawful Medicaid terminations per Income Termination Notices by affirmatively ordering that Defendants prospectively reinstate the property interests in Medicaid coverage of Plaintiff and proposed class until Defendants provide the enrollees an adequate termination notice that satisfies the requirements of constitutional due process, including setting forth the specific reasons why termination is proposed;

> d) Preliminarily and permanently enjoin Defendants from terminating Medicaid coverage for future members of the proposed class without first providing the enrollee a termination notice that satisfies the requirements of due process, including setting forth the specific reasons why termination is proposed . . . .

*Id*. at 14–15. Filyaw also filed a motion to certify a class and a motion for a temporary restraining order (TRO). The TRO was denied, as the district court determined Filyaw was unlikely to succeed on the merits because Filyaw sought retroactive or retrospective relief against Defendants, who were protected by

sovereign immunity, and because the notices regarding her Medicaid rights likely satisfied due process.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a plausible claim for relief under Rule 12(b)(6). First, the district court considered whether it had subject matter jurisdiction prior to ruling on Filyaw's motion to certify a class, and thus it considered only Filyaw's claims—not the class claims—in ruling on the motion to dismiss. Next, the district court concluded that Filyaw had alleged no ongoing violation. Filyaw's Medicaid coverage had been terminated at the time that she filed her federal complaint because she had not appealed the state's determination. Consequently, she "ha[d] no Medicaid benefits to lose" and was "not at risk of being erroneously deprived of Medicaid coverage." R. Doc. 47, at 16. The district court stated that "the lingering effects of Defendants' past action do not convert it into an ongoing violation." *Id.* at 17 (cleaned up). Finally, the district court found that Filyaw also was not seeking prospective relief, as Filyaw sought "a reparative injunction" "to cure past injuries." *Id.* at 19 (quoting *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023)). This appeal followed the district court's dismissal of Filyaw's complaint.

## II. *Discussion*

On appeal, Filyaw argues that she still suffers "an ongoing violation of her due process rights because she has not received adequate pre-termination notice, remains without Medicaid, and is at risk of future violations." Appellant's Br. at 2. She argues that she is entitled to prospective reinstatement to Medicaid until she receives a constitutionally adequate termination notice.[3] Defendants argue that the

---

[3]In her opening brief, Filyaw developed no argument as to the district court's decision to only consider her claims and not the claims of the proposed class. "Claims not raised in an opening brief are deemed waived. This court does not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief.'" *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (citation omitted)

ongoing effects of the allegedly deficient pre-termination notice do not turn her past termination into an ongoing violation of federal law.

> [A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. But the Supreme Court has also recognized sovereign immunity does not bar certain suits seeking declaratory and injunctive relief against state officers in their individual capacities based on ongoing violations of federal law. The *Ex parte Young* doctrine rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.

*Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022) (cleaned up).

The doctrine of *Ex parte Young* is "a narrow exception" to sovereign immunity. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024). There are two requirements to meet the *Ex Parte Young* exception. First, the plaintiff must "allege[] an ongoing violation of federal law." *281 Care Comm. v. Arneson* (*281 Care Comm. I*), 638 F.3d 621, 632 (8th Cir. 2011) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Second, the plaintiff must be seeking prospective relief. *Id.*

Both parties agree that receipt of Medicaid is a constitutionally protected property interest. Where they differ is whether the alleged violation is ongoing and whether the relief that Filyaw seeks is prospective.

---

(quoting *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 421 n. 5 (8th Cir. 2005)). Filyaw thus waived any argument that the district court erred in considering only her claims and not the claims of the class as well.

### A. *Ongoing Violation*

Filyaw avers that she can show an ongoing violation in two ways. First, she states that because she has yet to receive proper pre-termination notice, she remains entitled to Medicaid benefits and Defendants continue to deprive her of those benefits. Second, she argues that she faces a risk of receiving the same pre-termination notice in the future because it is the policy and practice of Defendants to issue the allegedly inadequate pre-termination notices.

### 1. *Continual Deprivation of Medicaid*

We have not squarely addressed whether the termination of benefits following a discrete act of issuing a constitutionally deficient pre-termination notice constitutes an ongoing violation. However, analogous cases from this circuit and our sister circuits indicate that Filyaw faces no ongoing violation of federal law. Instead, she is experiencing the effects of the allegedly unconstitutional pre-termination notice.

In *Humphrey v. Eureka Gardens Public Facility Board*, 891 F.3d 1079 (8th Cir. 2018), African-American homeowners alleged that the defendants violated their rights to procedural due process, substantive due process, and equal protection by installing grinder sewer systems instead of gravity sewer systems at their residences, resulting in higher utility expenses than residences with gravity systems. *Id*. at 1081. The *Humphrey* plaintiffs argued that they faced a continuing constitutional violation; thus, their claim was not time-barred. *Id*. at 1082. Although the court in *Humphrey* dealt with whether a claim was time-barred, it analyzed whether the plaintiffs' claims could be characterized as ongoing violations of federal law. *See id*. In doing so, the court in *Humphrey* looked to *Montin v. Estate of Johnson*, 636 F.3d 409 (8th Cir. 2011). There, we explained that

> [n]ot every plaintiff is deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to condition or policy. . . . This is particularly true where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth

Amendment claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme.

*Id.* at 415. In *Montin*, a civilly-committed sex offender experienced daily "unconstitutional restrictions o[n] his liberty of movement," and thus we found a continuing violation. *Id.* at 416. However, we also noted that the court would not have found a continuing violation for a "discrete act." *See id.* (internal quotation marks omitted). Applying that logic in *Humphrey*, we held that the discrete act of installing a different sewer system for some homes resulting in additional expenses for the homeowners did not cause the violation to be ongoing, as the "continuing responsibility for the additional expenses they entail[ed]" were "delayed, but inevitable, consequences of" the decision to install one sewer system over another. *Humphrey*, 891 F.3d at 1082.

*Humphrey* also analyzed the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), in which the Supreme Court considered whether a college professor's Title VII claim was time-barred. *Id.* at 258. In *Ricks*, a college professor alleged a Title VII violation for his denial of tenure. *Id.* at 254. After the allegedly unconstitutional denial of tenure, the university terminated the professor a year later. *Id.* at 253. The Supreme Court ultimately held that

the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [the professor]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id.* at 258 (footnote omitted). "The professor's termination was not a 'continuing violation' of Title VII, but was instead 'a delayed, but inevitable, consequence of the denial of tenure.'" *Humphrey*, 891 F.3d at 1082 (quoting *Ricks*, 449 U.S. at 257–58). Each of these cases—*Humphrey*, *Montin*, and *Ricks*—distinguished between the discrete violation of federal law and the ongoing effects from that violation. Here,

the only alleged violation of federal law occurred when Filyaw received the allegedly defective Notice. That completed act has not been repeated in Filyaw's case. Thus, Filyaw is not suffering an ongoing violation of federal law, "even though one of the *effects* of the [allegedly unconstitutional pre-termination notice]—the eventual loss of [Medicaid]—did not occur until later." *Ricks*, 449 U.S. at 258.

An analogous case from the Third Circuit also supports this conclusion. *See Merritts*, 62 F.4th at 772. Merritts sought injunctive relief related to Pennsylvania state officials' allegedly unconstitutional condemnation of his land. *Id*. at 768. The defendants pursued easements across Merritts's property. *Id*. Merritts rejected the officials' offers. *Id*. In response, they instituted a condemnation proceeding against Merritts. *Id*. After unsuccessfully challenging that condemnation proceeding in state and federal court, Merritts brought suit under 42 U.S.C. § 1983 for declaratory and injunctive relief, arguing that the taking of his land was unconstitutional. *Id*. at 770.

The Third Circuit held that the Eleventh Amendment barred Merritts's claim because he was not alleging an ongoing violation of federal law. *Id*. at 772. This was because

> Merritts pursues injunctive and declaratory relief based on two claimed past violations of federal law: acquiring the easements without justification and not providing just compensation. Although those earlier actions may have present effect, that does not mean that they are ongoing. *See Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."). Here, after Merritts refused the offer of $500 for the easements, PennDOT acquired them through a condemnation proceeding that concluded before this lawsuit was filed. The lingering effects of that discrete past action do not convert it into an ongoing violation.

*Id*. Filyaw attempts to distinguish *Merritts* by stating that "the underlying state condemnation proceedings were long completed, and the defendants lawfully owned

-8-

the property at the time the federal lawsuit attempting to review the state court judgment was filed in federal court." Appellant's Br. at 27. But Merritts was arguing that the defendants there had unlawfully taken his property in violation of the Constitution, just as Filyaw is arguing that Defendants here unlawfully terminated her Medicaid benefits without proper pre-termination notice. *See Merritts*, 62 F.4th at 772. Like the plaintiff in *Merritts*, the violation that Filyaw asserts is a past act, and she seeks remedy for that past violation.

Filyaw cites several cases that she contends support her entitlement to prospective reinstatement of her benefits until she receives proper notice. These cases, however, predate *Green v. Mansour*, 474 U.S. 64 (1985). *Green* made clear that the *Ex parte Young* exception to Eleventh Amendment sovereign immunity required an "ongoing violation[] of federal law." *Id.* at 71; *see also Cotto v. Campbell*, 126 F.4th 761, 771 (1st Cir. 2025) (stating that "the Court granted certiorari in *Green* to answer" whether a court can "issue a declaratory judgment that state officials violated federal law in the past" "[i]f there is no ongoing violation of federal law" (internal quotation marks omitted)). Thus, Filyaw's cases are not on point because they fail to consider whether the violation is ongoing.[4]

This case differs from other cases in our sister circuits that have found an ongoing violation for present effects from a past violation. In *Sherwood v.*

---

[4]*See Edelman v. Jordan*, 415 U.S. 651, 667–69 (1974) (holding that an award of retroactive payments was barred by the Eleventh Amendment); *see also Milliken v. Bradley*, 433 U.S. 267, 289–90 (1977) (holding than an order "requir[ing] state officials . . . to eliminate a de jure segregated school system" was "prospective relief . . . not barred by the Eleventh Amendment"); *Chu Drua Cha v. Noot*, 696 F.2d 594, 607 (8th Cir. 1982) (holding that plaintiffs were entitled to the prospective relief of reinstatement of their benefits until they had received proper notice without any analysis of whether there was an ongoing violation of federal law); *Kimble v. Solomon*, 599 F.2d 599, 604–05 (4th Cir. 1979) (holding that the district court could order prospective relief requiring the state to provide benefits until the plaintiffs received adequate pre-termination notice, without addressing whether there was any ongoing violation of federal law).

*Marchiori*, 76 F.4th 688 (7th Cir. 2023), the plaintiff was denied benefits without any notice whatsoever nor afforded an opportunity for a hearing. *Id*. at 694. Thus, plaintiff's procedural due process claim was ongoing because the plaintiff "never had a chance to tell their side of the story." *Id*. at 696 (cleaned up). In contrast, the plaintiff in *Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002), received a post-deprivation hearing. *See id*. at 718. Consequently, even an allegedly inadequate notice prior to the state action was not characterized as ongoing. *See id*. *But see Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 523–24 (7th Cir. 2021) (holding permit issued in violation of due process remained unlawful as long as it was in force and effect, as plaintiff alleged that the officials who issued the permit were biased).

In *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989), South Carolina terminated a cargo supervisor without any pre- or post-termination notice provided by state law. *Id*. at 305. There, the Fourth Circuit held that this was an ongoing violation. *Id*. By contrast, in *Talley v. Folwell*, 133 F.4th 289 (4th Cir. 2025), the Fourth Circuit found no ongoing violation when the plaintiff's benefit reduction claim could have been appealed despite not having an opportunity to raise due process before an administrative law judge (ALJ). *Id*. at 298–99. Even though she was not allowed to make that argument before the ALJ, "she had a right to appeal that decision to the superior court of the county where she resided." *Id*. at 299. Thus, the plaintiff's "decision not to avail herself of the appeals process—through which she could have made her constitutional arguments in state court—does not render the process she received constitutionally deficient." *Id*.

These cases can be distinguished based on whether the alleged denial of procedural process could be characterized as ongoing or whether it was a single discrete act in the past. In *Sherwood* and *Coakley*, the plaintiff never received any post-termination process or even had the opportunity for such a process, and that denial continued throughout the pendency of the lawsuit. *See Sherwood*, 76 F.4th at 696 ("[G]iven the sustained absence of any process here . . . the alleged federal due-process violations are still ongoing."); *Coakley*, 877 F.2d at 305–07 (holding that the

"deni[al of] adequate pre- and post-termination process" authorized by unconstitutional regulations could be characterized as ongoing). In contrast, in *Sonnleitner* and *Talley*, the plaintiff either had a post-deprivation hearing or had the opportunity for one and decided to forgo it, and thus the only deprivation was at a single point in the past, when the pre-deprivation notice was issued. *See Sonnleitner*, 304 F.3d at 718 (holding that "the allegations against the defendants in their official capacities refer to, at most, a past rather than an ongoing violation of federal law" because the plaintiff "was eventually given an opportunity to tell his side of the story"); *Talley*, 133 F.4th at 298 (holding that "any recoupment now being pursued by defendants [was] not an ongoing consequence of an inadequate process" because the plaintiff decided "not to avail herself of the appeals process[ ]through which she could have made her constitutional arguments in state court"). Here, Filyaw is more like the plaintiffs in *Sonnleitner* and *Talley*; she had the opportunity for both a pre- and post-termination hearing, as outlined on the Notice. Thus, her only deprivation occurred at a discrete point in the past and is not a continuing violation.

## 2. *Risk of Receiving Same Pre-termination Notice*

Filyaw further argues that even if the failure to issue a proper pre-termination notice does not qualify as an ongoing violation, she still meets the requirement to show an ongoing violation of federal law because she faces an imminent risk of receiving the same improper notice in the future.

"Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction." *281 Care Comm. v. Arneson* (*281 Care Comm. II*), 766 F.3d 774, 797 (8th Cir. 2014) (quoting *Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir. 1992) (per curiam)). Filyaw must show that she is "subject to or threatened with" receiving another allegedly improper notice. *See id.* An ongoing violation can be shown if "[t]he very harm alleged remains likely to recur barring a change in the state's operation of the program or judicial intervention." *Elder*, 54 F.4th at 1062.

Filyaw argues that "because she is entitled to reinstatement in Medicaid, she faces a risk that she will be issued a deficient . . . Notice again." Appellant's Br. at 29. She argues that *Elder* supports this result. The district court, however, properly applied *Elder* to Filyaw. In *Elder*, the plaintiffs had appealed their benefits termination through the state process, already had their benefits reinstated, and sought an injunction to prevent the inadequate notice from recurring. 54 F.4th at 1060. Filyaw did not challenge the district court's decision to only consider her claim and not the claims of her proposed class. As a result, she cannot rely on the potential risk that members of her class may face in receiving the same Notice in the future. Filyaw is no longer enrolled in Medicaid, and she does not allege in her complaint that she would be entitled to Medicaid if she applied today. Defendants correctly point out that the chain of causation for Filyaw to receive the same Notice is too attenuated to represent "a real likelihood" that her due process rights would be violated in the future. *See 281 Care Comm. II*, 766 F.3d at 797 (internal quotation marks omitted). She would have to (1) requalify for Medicaid; (2) choose to apply and receive benefits; (3) earn income that exceeds the eligibility thresholds; and (4) receive the same termination Notice. Thus, she is not at risk of receiving the same allegedly inadequate Notice again in the future. *See McCartney v. Cansler*, 608 F. Supp. 2d 694, 699–700 (E.D.N.C. Mar. 16, 2009) (finding a class of plaintiffs who had been denied, reduced, or terminated Medicaid coverage had sufficiently stated an ongoing violation when they had alleged that the "policies and practices . . . imminently threaten [p]laintiffs . . . with further illegal denials, reductions, and terminations of coverage" (internal quotation marks omitted)), *aff'd sub nom. D.T.M. v. Cansler*, 382 F. App'x 334 (4th Cir. 2010) (unpublished per curiam)

Filyaw's arguments regarding whether there is an ongoing violation are unpersuasive. Filyaw received the allegedly inadequate Notice at a discrete point in the past, and Filyaw is not at risk to receive the same Notice in the future. She has not shown that the alleged violation is ongoing nor has she shown that the *Ex parte Young* exception to sovereign immunity is applicable.

## B. *Nature of Relief*

Filyaw requests a declaration that the Notice that she received violated her right to due process. She also seeks an injunction reinstating her enrollment in Medicaid until she does receive proper notice. Both forms of relief are effectively retrospective in nature and thus barred by the Eleventh Amendment.

Filyaw's requested relief must be both prospective and equitable to qualify for the *Ex parte Young* exception to sovereign immunity. *See Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911 (8th Cir. 2022). The requirement to show that the relief is prospective is "closely related" to the ongoing-violation requirement. *Cotto*, 126 F.4th at 771. This is because "[w]ithout an ongoing violation to curtail, there are no prospective injunctions for a federal court to issue." *Id. Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

The district court correctly found that "Filyaw's request for a declaration that Defendants violated her due process rights is fundamentally retrospective because it does not relate to an ongoing violation of her federal rights; instead, it pertains to the May 2024 termination of her Medicaid coverage." R. Doc. 47, at 19 (cleaned up). Filyaw's requested relief is a declaration that her rights were violated in the past and thus is barred by sovereign immunity.

Filyaw's request for an injunction reinstating her Medicaid benefits similarly fails. The Supreme Court has established that when "there is no continuing violation of federal law to enjoin . . . an injunction is not available." *Green*, 474 U.S. at 71. Plaintiff's claim mirrors the situation in *Merritts*, in which the court found that the plaintiff was essentially requesting "a reparative injunction" "to cure [a] past injur[y]." 62 F.4th at 772.

This characterization is supported by Filyaw's complaint, which does not allege that she is currently eligible for Medicaid. Instead, Filyaw challenges only the

past procedural deficiencies in the Notice that she received. Because any injunctive relief would address past harm rather than "serve[] directly to bring an end to a present violation of federal law," *Papasan*, 478 U.S. at 278, such relief is retrospective in nature and therefore barred by the Eleventh Amendment.

### III. *Conclusion*

Accordingly, we affirm.[5]

COLLOTON, Chief Judge, dissenting.

Gillian Filyaw alleged that state officials have engaged in an ongoing violation of Filyaw's rights under the Due Process Clause. She sought prospective relief to end the violation. Filyaw may proceed with her claim under 42 U.S.C. § 1983 and the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), so I would reverse the judgment and remand for further proceedings.

Filyaw asserts that state officials unlawfully terminated her eligibility for benefits under the Medicaid program without adequate notice. On that basis, she alleges that the officials deprived her of property without due process of law, in violation of the Fourteenth Amendment. Because, according to the complaint, the State has never provided Filyaw with adequate notice or a proper termination hearing, and has continued to declare her ineligible for Medicaid benefits, she has alleged an ongoing violation of her constitutional rights. Filyaw seeks prospective relief in the form of a declaratory judgment and injunction that would require the state officials to reinstate her eligibility for Medicaid until such time as the State affords her adequate notice and properly terminates her benefits.

---

[5]Because we hold that Filyaw does not meet the requirements to meet the exception of sovereign immunity established in *Ex parte Young*, we need not reach the question of whether we should abstain under *Younger v. Harris*, 401 U.S. 37 (1971), or the merits of Filyaw's claims.

The majority identifies authority from other circuits that show the way, but then declines to follow them. As the court explained in *Sherwood v. Marchiori*, 76 F.4th 688 (7th Cir. 2023), where a State terminates benefits without adequate process, and the plaintiff has a continued property interest in the underlying benefits, "the alleged federal due-process violations are still ongoing." *Id*. at 696. Similarly, where approval of a permit was allegedly tainted by adjudicator bias in violation of the Due Process Clause, a plaintiff challenging the process by which the permit was issued advanced a claim of ongoing constitutional violation that could proceed under *Ex parte Young*. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 523-24 (7th Cir. 2021). In *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989), a State terminated an employee without proper notice as required by state law, so the plaintiff alleged an ongoing due-process violation until he received notice and an opportunity to be heard on the termination. *Id*. at 307. Filyaw's claim is of the same ilk: Her complaint alleges that she never received due process—before or after termination of her benefits—so the ongoing deprivation of benefits without due process is an ongoing constitutional violation.

The majority relies instead on inapposite decisions in which any due process violation had been cured by the provision of a hearing after adequate notice. *See Talley v. Folwell*, 133 F.4th 289, 298-99 (4th Cir. 2025) (no ongoing due-process violation because State provided hearing at which plaintiff was able to oppose recoupment); *Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (no ongoing due-process violation because plaintiff received post-deprivation hearing). The majority asserts that Filyaw likewise "had the opportunity for both a pre- and post-termination hearing, as outlined on the Notice." But of course Filyaw's allegation is that the notice was inadequate under the Due Process Clause, and this court must accept that allegation as true for purposes of a motion to dismiss. There was no adequate opportunity for hearings unless the court erroneously assumes on the merits that the allegedly deficient notice was not deficient.

The majority also cites *Merritts v. Richards*, 62 F.4th 764 (3d Cir. 2023), but that case does not support the State's position here. The plaintiff in *Merritts* alleged

that an unconstitutional taking of private property constituted an ongoing violation of federal law. But the State had acquired the property at issue in a state condemnation proceeding that was concluded before the federal lawsuit was filed, and the property owner declined to file a petition challenging the amount of compensation, so any violation of federal law had concluded. *Id*. at 772. There was no ongoing deprivation of property based on a denial of due process as in *Sherwood*, *Driftless*, *Coakley*, and this case.

Filyaw seeks prospective relief that would require the State to reinstate Medicaid coverage until such time as the State provides adequate termination notice that satisfies the Due Process Clause. Accordingly, Filyaw's claim may proceed against the defendant officials under 42 U.S.C. § 1983 and the doctrine of *Ex parte Young*. This conclusion, of course, implies no view on the merits of her claim.

_____